**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DAVID LEE WOMACK, | |
| Plaintiff, | No. 1:CV-06-2348-CCC |
| v. | Judge Christopher C. Conner |
| JOSEPH V. SMITH, et al., | JURY TRIAL DEMANDED |
| Defendants. | Filed Electronically |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS,
OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

# INTRODUCTION

For twenty-six consecutive days, with no breaks, Defendants shackled and bound Plaintiff David Lee Womack in full wrist, leg, and waist restraints. This caused wounds, excessive swelling, and damage to his neck, and kept him from standing up straight, lying flat, exercising, or even wiping himself after defecating. Concededly, Mr. Womack has been convicted of horrible crimes. He is currently serving consecutive sentences that total almost a century. But Mr. Womack is a human being. He possesses basic rights, and these are enshrined in the Eighth Amendment to our Constitution.

Defendants attempt to justify their actions by reference to Mr. Womack's past behavior, but they admit that such behavior was mere manipulation and that they did not take it seriously. Even Mr. Womack's alleged actions during his twenty-six-day shackling fail to show any serious threat, for they amounted only to name-calling, soiling his cell, and refusing to stand and speak during examinations. These were actions Mr. Womack took to protest the restraints and were reasonable given the circumstances in which he was placed.

Defendants seek to show: (1) that Mr. Womack has not sufficiently alleged an Eighth Amendment claim; and (2) there are no genuine issues of material fact. On both points they have failed. First, Mr. Womack has a well-pled complaint, comprised of specific allegations of each defendant's personal liability. Second,

this case has critical factual issues, such as whether Defendants had a sufficiently culpable state of mind to constitute an Eighth Amendment violation, and whether administrative remedies were available Mr. Womack.

These days, it seems all too often that stories of torture in faraway places are commonplace. We are forced to confront the fact, however, when we are confronted with cases such as Mr. Womack's, that torture is happening right here at home. This case presents the opportunity for the Court to rule that United States prisons remain subject to the U.S. Constitution, and that torture is simply not allowed inside them.

## QUESTIONS PRESENTED

A.    Should This Court Deny Summary Judgment, Because Defendants' Treatment of Mr. Womack Violated The Eighth Amendment?

B.    Should This Court Deny Summary Judgment In Favor Of Defendants, Because Defendants Are Not Entitled To Qualified Immunity?

C.    Should This Court Deny Defendants' Motion to Dismiss, Because Mr. Womack's Complaint Does Not Rely On Respondeat Superior?

D.    Should This Court Deny Defendants' Motion to Dismiss, Because Mr. Womack's Complaint States A Claim For Which Relief May Be Granted?

E.    Should This Court Deny Defendants' Motion To Dismiss, Because Mr. Womack's Complaint Does Not Concern Retaliation?

F.      Should This Court Deny Defendants' Summary Judgment, Because They
        Cannot Meet Their Burden of Proving that Mr. Womack Did Not Exhaust
        Available Administrative Remedies?

Suggested answers: YES.

## FACTUAL BACKGROUND

On the night of December 8, 2004, Mr. Womack suffered a slip-and-fall accident due to water flooding his cell from a broken pipe. See Defendants' Statement of Facts ("SOF") ¶¶ 93-94. On December 9, 2004, after Mr. Womack was treated in the prison's infirmary, Defendant Gabrielson tried to return him to the damaged cell. See id. ¶ 98; Plaintiff's Response To Defendants Statement of Facts and Counter Statement of Facts ("COF") ¶ 99.1. When Defendant Gabrielson attempted to put Mr. Womack back in the broken cell, Mr. Womack resisted physically. See SOF ¶¶ 98-99; COF ¶ 99.1. Mr. Womack wanted to be moved to a cell where his health and safety were not endangered. See COF ¶ 97.2. As a result of this struggle, Defendant Gabrielson shackled Mr. Womack in full restraints. See SOF ¶ 102; COF ¶ 102.1-102.3.

Defendant Smith authorized the continued use of restraints on Mr. Womack. See SOF ¶ 104. Defendant Smith does not clearly articulate why the use of restraints was necessary, but admits that he agreed to release Mr. Womack when Mr. Womack "agreed to attempt to conform his behavior to Bureau of Prisons rules." See COF ¶ 150.1. Throughout the course of his shackling, Mr. Womack's

restraints were checked "without incident." <u>See</u> <u>COF</u> ¶¶ 117.3 (December 16, 2004), 119.2 (December 17), 123.1 (December 21), 130.2 (December 24), 132.2 (December 25), 141.1 (December 30), 143.1 (December 31), and 145.1 (January 1, 2005). Bureau of Prisons ("BOP") guards called Mr. Womack "slave boy" multiple times. <u>See</u> <u>COF</u> ¶ 109.3. During the time of the shackling, Defendants Dodrill and Lappin were notified of the continued use of restraints on Mr. Womack, but they took no action to stop the treatment. <u>See</u> <u>COF</u> ¶¶ 102.2-102.3.

As a result, Mr. Womack experienced serious pain, suffering, and injury, including the inability to lie flat, wounds on his wrists and ankles, and the inability to wipe himself. <u>See</u> <u>COF</u> ¶¶ 103.3, 122.1, 133, and 1-133.2. Specifically, Mr. Womack endured severe pain and suffering from the shackles digging his wrists, losing feeling in his arms and legs, and losing circulation in his wrists. <u>COF</u> ¶ 133.2. His "wounds were big deep holes that were raw, and looked like pink and white meat, [and] had a terrible odor," and they "hurt so much that [he] could barely move." <u>COF</u> ¶ 133.2.

On January 3, 2005, twenty-six days after being shackled, Mr. Womack was removed from the restraints. <u>See</u> <u>SOF</u> ¶ 150. To this day, Mr. Womack does not know why Defendants released him from the restraints at that particular time. <u>See</u> <u>COF</u> ¶ 148.4. However, while Mr. Womack was still in restraints, Defendant Smith had offered to remove him from the restraints if he accepted a cellmate, but Mr.

Womack refused Defendant Smith's offers. <u>See</u> <u>COF</u> ¶ 104.1-104.2.  Then, on

February 3, 2005, Defendants again demanded that Mr. Womack accept a cellmate.

<u>See</u> <u>COF</u> ¶ 1.9. Mr. Womack refused, and Defendants shackled him again. <u>See</u>

<u>COF</u> ¶ 1.9. The following day, Mr. Womack agreed to accept a cellmate, and

Defendants released him and placed him in a cell with another man. <u>See</u> <u>COF</u> ¶

1.11.

As soon as possible thereafter, Mr. Womack started the formal grievance

process. <u>See</u> <u>COF</u> ¶ 2.1. Mr. Womack's grievances were denied all the way up to

the Bureau of Prisons' Central Office, and Mr. Womack filed the instant action.

<u>See</u> <u>SOF</u> ¶¶ 3, 6, and 8.

## ARGUMENT

Defendants move to dismiss Mr. Womack's Complaint for failure to state a

claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), and for

summary judgment under Fed. R. Civ. P. 56(b). When ruling on a motion to

dismiss, a court should "accept as true the factual allegations in the complaint and

all reasonable inferences that can be drawn from them." <u>Markowitz v. Northeast</u>

<u>Land Co.</u>, 906 F.2d 100, 103 (3d Cir. 1990). Summary judgment under Fed. R.

Civ. P. 56(c) is appropriate if "there is no genuine issue as to any material fact and

… the moving party is entitled to a judgment as a matter of law," and the court

must view all reasonable inferences in a light most favorable to the nonmoving party. <u>Anderson v. Liberty Lobby</u>, 477 US 242, 249 (1986).

A.   **Defendants' Treatment of Mr. Womack Violated the Eighth Amendment.**

The Eighth Amendment prohibits infliction of "cruel and unusual punishments," which includes conditions of confinement in a prison that were not specifically part of the sentence. <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 (1991). "[U]nnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Defendants' Brief at 11 (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986)) (internal citations, quotations omitted by Defendants). "Among 'unnecessary and wanton' inflictions are those that are 'totally without penological justification.'" <u>Rhodes v. Chapman</u>, 452 U.S. 337, 346 (citing <u>Gregg v. Georgia</u>, 428 U.S. 153, 171 (1971)).

The framework for analysis of violations of the Eighth Amendment has two components: (1) an objective component, which asks, "Was the deprivation sufficiently serious?"; and (2) a subjective component, which asks, "Did the prison official act with a sufficiently culpable state of mind?" <u>Wilson</u>, 501 U.S. at 298; <u>see also</u> Defendants' Brief at 12, citing <u>Williams v. Benjamin</u>, 77 F.3d 756, 761 (4th Cir. 1996). Defendants all but ignore the objective component. As for the subjective component, Defendants apply an erroneously high legal standard, which

is intended for emergency prison disturbances and is inapplicable to the extended period of Mr. Womack's restraint.

Mr. Womack contends (1) that the appropriate legal standard for the subjective component of Eighth Amendment analysis is "deliberate indifference," and (2) that his claims objectively rise to the level of cruel and unusual punishment.

> **1.     Defendants' Conduct Should Be Evaluated Under The "Deliberate Indifference" Standard, Not The "Malicious/Sadistic" Standard.**

Defendants have used the wrong legal standard in evaluating the subjective component of Mr. Womack's Eighth Amendment claim. Defendants claim that Mr. Womack must show that he was not restrained in a "good faith effort to maintain or restore discipline," but "maliciously and sadistically for the very purpose of causing harm." Defendants' Brief at 12, quoting Hudson v. McMillian, 503 U.S. 1 (1992); Whitley, 475 U.S. at 321. This "malicious/sadistic" standard, however, applies only in cases of a prison disturbance or other threat of imminent harm, when the prison officials' actions "are necessarily taken in haste, under pressure, and frequently without the luxury of a second chance." Hudson, 503 U.S. at 6. Those conditions do not apply to Mr. Womack's twenty-six day ordeal, as prison officials were not acting in haste, under pressure, or without the luxury of a second chance during that prolonged period. See Hudson, 503 U.S. at 6.

Once Mr. Womack was restrained, the Defendants' state of mind should be evaluated as in most cases involving prison conditions, in which the court "must ascertain whether the officials acted with 'deliberate indifference' to the inmate's health or safety." Hope v. Pelzer, 536 U.S. 730, 737-38 (2002) (quoting Hudson, 503 U.S. at 8). In Hope, for example, the Supreme Court employed the "deliberate indifference" standard, rather than the "malicious and sadistic" standard, to determine whether prison officials had violated Mr. Hope's Eighth Amendment rights by handcuffing him to a "hitching post" for seven hours, after he had been subdued, handcuffed, and placed in leg irons, and the threat of any "emergency situation" had clearly passed. Id. at 738. The Court concluded the Eighth Amendment violation was "obvious," because the prison officials had knowingly subjected the prisoner to a substantial risk of physical harm, unnecessary pain and exposure to the sun, deprivation of drink and bathroom breaks, and taunting and humiliation during the seven-hour period he was restrained to the hitching post. Id.

In Hope and Hudson, the emergency situation had long passed before the man involved was freed from dangerous restraints. The "deliberate indifference" standard should likewise be employed to determine whether Defendants violated

Mr. Womack's Eighth Amendment rights by confining him for twenty-six days in the absence of any emergency situation.[1]

This distinction between the initial confinement and continuing confinement of a man is exemplified by one of the cases cited by Defendants, Sadler v. Young, 325 F. Supp. 2d 689 (W.D. Va. 2004), rev'd on other grounds, 118 Fed. Appx. 762 (4th Cir. 2005).[2] In Sadler, prison officials immobilized a man for nearly forty-eight hours by strapping his wrists, ankles, and chest to his bed (so-called "five-point restraints") after the man had hit a guard with his food tray. Id. at 690, 691-92. The court, using the "malicious/sadistic standard," concluded that the officials had acted reasonably in initially confining Mr. Sadler to five-point restraints because of his actions toward the guard. See id. at 700-01. However, the court separately considered whether the prison officials had acted reasonably in continuing to hold Mr. Sadler in five-point restraints for nearly forty-eight hours. See id. at 702. The court concluded the prison officials had no reasonable basis to continue to restrain Mr. Sadler for more than three hours, since by that time he had

---

[1]      Indeed, evidence shows that Defendants did not restrain Mr. Womack in an emergency situation. See Hope, 536 U.S. at 738; See also COF ¶ 120.1. The record is devoid of any evidence to the effect that in this case there was any emergency at any time.

[2]      The Fourth Circuit's reversal of the district court's opinion in Sadler was based on Fourth Amendment grounds and did not disturb the lower court's Eighth Amendment analysis.

calmed down and no longer posed a threat to anyone. <u>See id.</u> The court also noted

that Mr. Sadler had been temporarily released several times to eat, exercise, and

relieve himself,[3] all without incident, while prison officials admitted that Mr.

Sadler's derogatory comments during his confinement were perceived as non-

threatening because he made such comments all the time. <u>Id.</u> at 702. The court

concluded: "Neither the testimony nor the reports suggest any reason for keeping

Sadler restrained for nearly two days." <u>Id.</u> at 702.

The same analysis should be applied in Mr. Womack's much more extreme

case. Defendants, like the officials in <u>Sadler</u>, admit that Mr. Womack's actions,

including his alleged suicide threats, defacement of his cell, and name-calling,

were perceived as manipulations that were intended for effect and not to be taken

seriously. Defendants' Brief at 3.

Defendants further implicate themselves by attempting to justify their

actions based on Mr. Womack's alleged <u>past</u> <u>misconduct,</u> <u>prior</u> to the events that

actually gave rise to his confinement. Defendants' Brief at 19-20. But if Mr.

Womack's <u>past</u> conduct offered sufficient justification to restrain him for twenty-

six days, there is no reason why Defendants could not restrain Mr. Womack

indefinitely.

---

[3]     Although Mr. Womack was kept in restraints <u>thirteen</u> <u>times</u> longer than Mr.
Sadler, he received no such breaks.

Defendants have not shown how Mr. Womack's prior history gave them reason to believe he posed the kind of ongoing threat to others or property throughout the twenty-six period required by case law. As <u>Hope</u>, <u>Sadler</u>, and other cases have demonstrated, courts look to the person's behavior <u>during the period of his restraint</u> to determine whether continued restraint was justified. <u>See</u>, <u>e.g.</u>, <u>Hope</u>, 536 U.S. at 737-38; <u>Sadler</u>, 325 F. Supp 2d at 702-03. Even the <u>Williams</u> case, cited by Defendants, states that, while prison officials are owed some deference in deciding how long to restrain a human being, "[d]eference to prison administrators does not give them constitutional license to torture an inmate." <u>Williams</u>, 77 F.3d at 765, quoted in Defendants' Brief at 16. Or, as <u>Sadler</u> states: "At some point, an inmate's continued restraint without evidence of its necessity is unconstitutional." <u>Sadler</u>, 325 F. Supp. 2d at 704, quoted in Defendants' Brief at 16. <u>See</u> <u>also</u> <u>Kimball</u>, 2007 WL 87897, at *13 (citing, <u>inter alia</u>, <u>Hutto v. Finney</u>, 437 U.S. 678, (1978)) (commenting that "[t]he length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards.").

   2.   **Substantial Evidence Shows That Defendants Acted With "Deliberate Indifference" And Therefore Summary Judgment Must Be Denied.**

As discussed above, the appropriate standard by which to measure Defendants' shackling of Mr. Womack is whether they acted with deliberate indifference to Mr. Womack's health and safety. Defendants exhibit an unlawful

"deliberate indifference" to an person's condition of confinement if they knew of and disregarded an excessive risk to the inmate's health or safety, or were aware of facts from which could be drawn an inference that a substantial risk of serious harm existed and drew that inference. <u>Kelly v. Sapko</u>, 2006 WL 2380768, *7 (W.D. Pa. Aug. 16, 2006). Defendants acted with deliberate indifference because they should have known of his pain, they were likely trying to punish him for not taking a cell mate rather than restraining him for cause, they used more force than needed, and their explanation that his actions required this response is untenable.

First, Defendants should have known Mr. Womack suffered severe pain that was "caused by the restraints digging into [his] wrists," he was "losing feeling in [his] arms and legs, and … losing circulation in [his] wrists," his "wounds were big deep holes that were raw, and looked like pink and white meat, [and] had a terrible odor," and "[t]hey hurt so much that [he] could barely move." <u>COF</u> ¶ 133.2. Defendants must have been aware of Mr. Womack's condition because they admittedly examined him a number of times, during which they noticed on at least one occasion that his restraints were "tight," or on other occasions had caused "mild swelling" or "mild abrasions," which required cleaning. Defendants' <u>SOF</u> ¶¶ 107-08, 131, 133, 146, 149; <u>see also</u> <u>COF</u> ¶ 103.3. Defendants were also aware that during the time he was restrained, Mr. Womack was "unable to lie down flat," "unable to bathe," "unable to exercise," and "unable to wipe" himself after using

the toilet, which were obvious consequences of the full restraints that Defendants forced Mr. Womack to wear for nearly a month. See COF ¶ 103.3.[4] The evidence thus shows that Defendants acted with "deliberate indifference" to the risks to Mr. Womack's health and safety. See Kelly, WL 2380768, *7 (W.D. Pa. Aug. 16, 2006), citing Farmer, 511 U.S. at 837.

Second, there is even evidence that Defendants were restraining Mr. Womack to punish him for refusing to accept a cellmate, or to compel him to take a cellmate. See COF ¶¶ 104.1-104.2, 1.9, and 1.11. The use of restraints as punishment is expressly prohibited by BOP policy, as discussed below. See also, Bureau of Prisons P.S. 5566.05, Application and Use of Restraints.

The question of Defendants' motivation cannot be resolved on summary judgment. Courts have held that summary judgment is particularly inappropriate for Eighth Amendment claims because a defendant's state of mind is inherently a question of fact that rests on credibility. See Young v. Quinlan, 960 F.2d 351, 360 n.21 (3d Cir. 1992).

In addition, Defendants' own allegations raise at least a genuine issue of material fact as to whether Defendants were improperly using the restraints to punish Mr. Womack for his past misconduct or for his refusal to accept a cellmate.

---

[4]    Mr. Patrick Johnson, an inmate formerly housed at USP Lewisburg, confirms: "It is impossible to take care of necessary toilet functions when one is kept in 'ambulatory' restraints." Patrick Johnson Declaration (Ex. 2) ¶ 31.

If that were the case, then Defendants also violated BOP regulation 5566.05 §

66(h)(1), which prohibits the use of restraints as a "method of punishing an

inmate."

Third, Defendants used more force than necessary. Defendants' actions are

particularly striking because they are in violation of their own policy. BOP policy

states:

> The Bureau of Prisons authorizes staff to use force <u>only as a last</u>
> <u>alternative after all other reasonable efforts to resolve a situation have</u>
> <u>failed</u>. When authorized, staff must use <u>only that amount of force</u>
> <u>necessary</u> to gain control of the inmate, to protect and ensure the
> safety of inmates, staff and others, to prevent serious property damage
> and to ensure institution security and good order.

Bureau of Prisons P.S. 5566.05, <u>Use of Force and Application of Restraints on</u>

<u>Inmates</u> § 1 (emphasis added); <u>see</u> <u>also</u> <u>id.</u> § 2(a), (b), and (g). Specifically, the

regulations state that "[h]ard restraints (i.e., steel handcuffs and leg irons) are to be

used <u>only after soft restraints prove ineffective</u>, or a past history of ineffectiveness

exists." <u>Id.</u> § 6(h)(3); <u>see</u> <u>also</u> § 6(d) ("Restraints should be used only when other

effective means of control have failed or are impractical."). This language mirrors

Eighth Amendment analysis. <u>See</u> <u>also</u> <u>Furman v. Georgia</u>, 408 U.S. 238, 282

(1972) (noting that courts should consider <u>inter</u> <u>alia</u> "if there is no reason to believe

[the punishment] serves any penal purpose more effectively than some less severe

punishment").

As explained above, Defendants failed to use only the amount of force necessary to prevent injury to persons or property, because Mr. Womack did not pose a serious threat to persons or property during his twenty-six days of restraint. There is also no evidence that Defendants used a progressive system of restraints, or ever considered using a less extreme means of restraints at any time during his twenty-six-day ordeal. Moreover, evidence shows that Defendants were able to check Mr. Womack's restraints "without incident" throughout the course of his confinement. See COF ¶¶ 117.3 (December 16, 2004), 119.2 (December 17), 123.1 (December 21), 130.2 (December 24), 132.2 (December 25), 141.1 (December 30), 143.1 (December 31), and 145.1 (January 1, 2005). Defendants thus violated numerous parts of P.S. 5566.05, as outlined above. Such departures from BOP policy were expressly prohibited because there was no longer any immediate need to use force to prevent Mr. Womack from causing "serious" injury to persons or property. See P.S. 5566.05, § 5(d).[5]

---

[5]   BOP policy states in pertinent part:

> Exceptions. Any exception to procedures outlined in this rule is prohibited, except where the facts and circumstances known to the staff member would warrant a person using sound correctional judgment to reasonably believe other action is necessary (as a last resort) to prevent serious physical injury, or serious property damage which would immediately endanger the safety of staff, inmates, or others.

P.S. 5566.05 § 6(d) (emphasis partially added).

Fourth, Defendants argue that Mr. Womack's conduct during the twenty-six days – Mr. Womack admits that he ignored officers' requests to talk to him, refused to get out of bed, and smeared his cell with feces and urine – necessitated the shackles, but that is a factual question that remains in dispute.[6] See, e.g., COF ¶ 129; Defendants' SOF ¶¶ 101, 109-12, 115-20, 123-24, 129, 135, 139-40. However, Mr. Womack explains that he took those actions specifically to protest the improper use of the ambulatory restraints. In other words, had Defendants acted rationally and removed the restraints after Mr. Womack had calmed down after the initial incident, Mr. Womack probably would not have acted in the manner he did.

---

[6]     Although it surely seems foreign to the Court, throwing and smearing feces are part of prison life and a normal act committed by those who have had everything but their bodily waste taken from them. See, e.g., Lorna A. Rhodes, Total Confinement: Madness and Reason in the Maximum Security Prison 44–49 (2004). It is the "one act capable of reversing – at least momentarily – the usual trajectory of contempt." Id. at 45.

> [P]risoners and their keepers are constantly in one another's presence yet enjoined never to lose sight of the line between them. Under these circumstances it is not surprising that some prisoners enlist the most literal aspects of the body to involve the tangle of wary contempt governing that boundary.

Id. at 46.

### 3.    Mr. Womack's Torture Is Sufficiently Serious As To Violate His Eighth Amendment Rights.

As noted above, Eighth Amendment analysis has two components: (1) a subjective component, which asks, "Did the prison official act with a sufficiently culpable state of mind?" and (2) an objective component, which asks, "Was the deprivation sufficiently serious?" <u>Wilson</u>, 501 U.S. at 298. Twenty-six uninterrupted days in full restraints is a sufficiently serious deprivation.

The heart of this case is the meaning of "cruel and unusual punishment." The drafters of the Constitution "were primarily concerned with proscribing 'tortures' and other 'barbarous' methods of punishment." <u>Gregg v. Georgia</u>, 428 U.S. 153, 169-170 (U.S. 1976) (quoting Granucci, "Nor Cruel and Unusual Punishments Inflicted: The Original Meaning," 57 Calif. L. Rev. 839, 852-853 (1969)).

The Supreme Court has held that the Eighth Amendment embodies not a static prohibition only of those tortures the Founding Fathers would have found repulsive, but must be understood "with due regard for its purpose and function in the constitutional design." <u>Roper v. Simmons</u>, 543 U.S. 551, 560-561 (2005). The meaning of "cruel and unusual punishment" must be judged against "the evolving standards of decency that mark the progress of a maturing society." <u>Trop v. Dulles</u>, 356 U.S. 86, 100-101 (1958) (plurality opinion) (reaffirmed in <u>Roper</u>, 543 U.S. at 560-61). <u>See also</u> <u>United States v. Walker</u>, 473 F.3d 71, 79 (3d Cir. 2007), and

<u>Atkinson v. Taylor</u>, 316 F.3d 257, 266 (3d Cir. 2003). Quite simply, decency forbids the unnecessary and wanton infliction of pain that is without penological justification. <u>Hope</u>, 536 U.S. at 737-738 (citing <u>Rhodes</u>, 452 U.S. at 346). To determine what violates evolving standards of decency, courts must look to case law, international standards, and opinions of professions outside the law. <u>See generally</u>, <u>Roper</u>, 543 U.S. 551.

On two independent fronts, Defendants inflicted unnecessary and wanton pain upon Mr. Womack. First, they deprived him of necessary sanitation. Second, and most importantly, they painfully kept him in full restraints for twenty-six days. Both violate evolved standards of decency as established by common law, international law, and medical experts.

### a.   Deprivation of "basic elements of hygiene"

Courts have been consistently clear that basic hygiene is a fundamental human need and denial of basic hygiene is cruel and unusual. <u>See</u> <u>Palmer v. Johnson</u>, 193 F.3d 346, 352 (5th Cir. 1999); <u>accord</u> <u>Harper v. Showers</u>, 174 F.3d 716, 717, 720 (5th Cir. 1999); <u>Bradley v. Puckett</u>, 157 F.3d 1022, 1025 (5th Cir. 1998).  Mr. Womack was unable to wipe himself clean after defecating. <u>See</u>, <u>e.g.</u>, <u>COF</u> ¶ 103.3  Despite Defendants' declarations to the contrary, it is simply impossible to be able to do so with one's hands cuffed together and chained to

one's waist. See id. Defendants are not able to refute common sense, no matter how many declarations they may submit to the contrary.

### b. Twenty-Six Days in Full Restraints Is Torture

Holding a human being shackled, wrists-chained-to-belly-chained-to-feet, is torture. See, e.g., COF ¶ 133.2 ("Mr. Womack's wounds were 'big deep holes that were raw, and looked like pink and white meat. They had a terrible odor. They hurt so much I could barely move. The parts of my hands and arms that were not in pain were numb from lack of circulation.') The use of such offensive techniques, except in limited circumstances, has been held unconstitutional for over one hundred years.

> The arbitrary power in a prison-keeper to iron a prisoner, or indeed, to select at his pleasure a penalty which he thinks adequate as a disciplinary measure for real or fancied misconduct, is intolerable among a free and enlightened people.

In re Birdsong, 39 F. 599, 600-601 (D. Ga. 1889).

When presented with excessive restraint use, the courts have been clear that the Eighth Amendment "precludes, at the very least, unreasonable restriction of prisoners' freedom to move their arms and legs." Wells v. Franzen, 777 F.2d 1258, 1261-62, n.1 (7th Cir. 1985). Using restraints as punishment has been held to be "a circumstance recognized to be repugnant to the mores embodied in our Constitution." Ferola v. Moran, 622 F. Supp. 814, 821 (D.R.I. 1985) (citing Gates v. Collier, 349 F. Supp. 881 (D. Miss. 1972); Owens-El v. Robinson, 442 F. Supp.

1368 (D. Pa. 1978). <u>See also</u> <u>Landman v. Royster</u>, 333 F. Supp. 621, 647-648 (D.

Va. 1971) (holding that using chains to control misbehavior and not even releasing

a man to use the bathroom is physical torture.)

The Supreme Court recently addressed a variation of shackling in <u>Hope</u>. In

that case, the Court made clear that the Constitution forbids using restraints as

punishment, even when couched as necessary to achieve compliance with rules.

> Despite the clear lack of an emergency situation, the respondents
> knowingly subjected him to a substantial risk of physical harm, to
> unnecessary pain cause by the handcuffs and the restricted position of
> confinement for a 7-hour period … and to a deprivation of bathroom
> breaks that created a risk of particular discomfort and humiliation.

536 US at 738 (footnote omitted). This punishment "violated the basic concept

underlying the Eighth Amendment, which is nothing less than the dignity of man.

This punitive treatment amount to gratuitous infliction of 'wanton and

unnecessary' pain that our precedent clearly prohibits." <u>Id.</u> (citations omitted). <u>See</u>

<u>also</u> <u>Hanks v. Prachar</u>, 457 F.3d 774, 775 (8th Cir. 2006) (holding that even though

Mr. Hanks had destroyed property and made threats to staff, four-point restraints

were unconstitutional because "long periods of in-cell restraints would not be

justified by such property destruction, [or] by the staff's fears of Hanks due to his

mere threats.").

The medical community, likewise, condemns this sort of restraint. Physical

restraints present more severe problems than whipping, because they pose "a

deadly risk to the persons restrained because it subjects those persons to a known

unreasonable risk of heart attack, dehydration and asphyxiation." <u>Hadix v. Caruso</u>,

461 F. Supp. 2d 574, 595 (D. Mich. 2006).  Moreover:

> The risk can no longer be overcome by medical monitoring because
> correctional physicians now recognize that punitive restraints are a
> form of torture which cannot be ethically facilitated by physician
> services, including facilitative medical monitoring.

<u>Id.</u>

Other domestic contexts make it clear that the treatment that Mr. Womack

received violates the evolving standards of decency. <u>See</u> <u>Trop</u>, 356 U.S. 86. For

one example, the Military Commissions Act of 2006, PL 109-366, 120 Stat. 2600,

prohibits such barbaric use of irons on unlawful enemy combatants held at

Guantanamo Bay. <u>See</u> <u>id.</u> at 2617. [7]

This Court may wish to consider the evolving standards of decency in the

world. The world community has made clear that putting prisoners in full restraints

violates modern standards of decency. <u>See</u> <u>Trop</u>, 356 U.S. 86. Shackling as

punishment clearly contravenes the U.N. Standard Minimum Rules for the

---

[7]     Additionally, the United States condemns other countries for engaging in
this kind of torture. By law, the United States Department of State must produce
Country Reports on Human Rights Practices, submitted annually to the U.S.
Congress. In 2006, the Eritrea Report criticized its practices, consisting of, <u>inter
alia</u>, binding of prisoners' hands and feet. U.S. Dep't of State, 2006 Country
Reports on Human Rights Practices (2007). The China Report condemns torture
consisting of "shackles, and other forms of abuse." <u>Id.</u>  The Egypt Report
denounces torture that include shackling. <u>Id.</u>

Treatment of Prisoners. United Nations Standard Minimum Rules for Treatment of Prisoners (1955) (cited with approval in <u>Estelle v. Gamble</u>, 429 U.S. 97, 103 n.8 (1976)). Specifically, the Minimum Rules require that:

> Instruments of restraint, such as handcuffs, chains, irons and strait-jackets, shall never be applied as a punishment. Furthermore, chains or irons shall not be used as restraints. …
>
> The patterns and manner of use of instruments of restraint shall be decided by the central prison administration. Such instruments must not be applied for any longer time than is strictly necessary.

<u>Id.</u> at Rules 33 and 34.

The great weight of national and international law would call the treatment the Defendants meted out to Mr. Womack torture and thus prohibit it under the Eighth Amendment. This Court should as well.

> **B.    This Court Should Deny Summary Judgment In Favor of Defendants, Because They Are Not Entitled To Qualified Immunity.**

Qualified immunity does not grant "a license to lawless conduct." <u>Harlow v. Fitgerald</u>, 457 U.S. 800, 819 (1982).  Defendants argue that, as government officials, they are entitled to qualified immunity and, therefore, entitled to summary judgment on Mr. Womack's claims. Qualified immunity, however, does not protect government officials from civil liability for violating an individual's Eighth Amendment rights to be free from cruel and unusual punishment. Government officials are entitled to <u>some</u> immunity from civil liability for actions

taken while performing governmental duties.  However, this immunity is not so broad to as to allow executive officers to discharge their duties with impunity, "in a way that is known to them to violate the United States Constitution or in a manner that they should know transgresses a clearly established constitutional rule." Butz v. Economou, 438 U.S. 478, 507 (1978). Mr. Womack is not seeking relief from Defendants for an injury resulting from a trivial error or minor rule violation in the performance of their governmental duties, but those resulting from a prolonged series of deliberate actions that deprived him of his Constitutional rights.

In Harlow, the Supreme Court defined the contours of qualified immunity: government officials enjoy qualified immunity from suits for civil damages only insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818. Thus, "[o]n summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time the alleged conduct occurred." Id.  If the law violated "was clearly established, the immunity defense ordinarily should fail" absent extraordinary circumstances revealing that the official did not know nor should have known the relevant legal standard, "since a reasonably competent public official should know the law governing his conduct." Id. at 819. For purposes of qualified immunity, defendants' particular conduct need not precisely mirror conduct previously

declared unconstitutional as notice does not require that facts of previous cases be materially or fundamentally similar to the situation in question. Hope, 536 U.S. at 741. Instead, the question is whether the state of the law at the time gave officials "fair warning" that their alleged treatment was unconstitutional. Id.

In this case, Defendants were on clear notice that their actions implicated the Eighth Amendment, for they acknowledge in their own brief that keeping Mr. Womack in restraints for twenty-six days presented a "difficult constitutional quandary" and that "at some point, an inmate's continued restraint without evidence of its necessity is unconstitutional." Defendants' Brief at 16-17 (quoting Sadler, 325 F. Supp. 2d at 704). Moreover, there is abundant case law that the use of restraints for such a prolonged period of time and for purposes of punishment was unconstitutional. See supra Section A.3. Courts on multiple occasions have found that the use of restraints, where not necessary to maintain or restore order, constitutes cruel and unusual punishment. See id. Thus, Defendants were on clear notice that the prolonged and improper use of physical restraints violated the Eighth Amendment's prohibition on cruel and unusual punishment. Even if they were unaware of the particular cases cited above, knowledge of the law may be imputed to them. Harlow, 457 U.S. at 819 ("a reasonably competent public official should know the law governing his conduct.").

Moreover, they were certainly aware of their own BOP regulations, which are specifically designed to avoid Eighth Amendment violations by, <u>inter alia</u>: limiting the use of force "only as a last alternative when all other reasonable efforts to resolve a situation have failed;" requiring that staff "use only that amount of force necessary to gain control of the inmate;" and allowing the use of "[h]ard restraints (i.e., steel handcuffs and leg irons) … only after soft restraints prove ineffective …. " P.S. 5566.05 §§ 1, 2(a), (b, and (g); 6(h)(3); 6(d) at pp. 6-7. Defendants clearly failed to abide by these limitations by restraining Mr. Womack for twenty-six days, when he posed no serious or immediate threat to anyone or anything.  <u>See</u>, <u>e.g.</u>, <u>COF</u> ¶¶ 117.3, 119.2, 123.1, 130.2, 132.2, 141.1, 143.1, and 145.1.  This policy alone was enough to put Defendants on notice that their actions were illegal. <u>See</u> <u>Hope</u>, 536 U.S. at 740-41.

For these reasons, Defendants are not entitled to qualified immunity, and Mr. Womack should be permitted to proceed with the investigation of his Eighth Amendment claims.

## C.   This Court Should Deny Defendants' Motion, Because Mr. Womack's Complaint Does Not Rely On <u>Respondeat Superior</u>.

Mr. Womack agrees with Defendants that <u>respondeat superior</u> cannot form the basis for a <u>Bivens</u> claim, and that he must allege individual involvement of each defendant that violated his constitutional rights. Moreover, Mr. Womack agrees with Defendant as to the requirements as outlined in <u>Haynesworth v. Miller</u>,

820 F. 2d 1245 (D.C. Cir. 1987): (1) the "official was responsible for supervising the wrongdoer;" (2) "a duty to instruct the subordinate to prevent constitutional harm arose from the surrounding circumstances;" and (3) "as a result of the official's failure to instruct, the plaintiff was harmed in the manner threatened." Mr. Womack contends, however, that the Third Circuit's additional personal involvement prong does not require an affirmative act. Rather, this prong includes the failure to act in light of personal knowledge of unconstitutional practices. See Baker v. Monroe Twp., 50 F.3d 1186, 1191 n.3 (3d Cir. 1995).

In this case, Mr. Womack is not relying on respondeat superior to implicate Defendants Lappin and Dodrill. First, Mr. Womack has alleged their respective positions in the BOP, Complaint ¶¶ 5 and 7, which, when read with all reasonable inferences, establish that they were responsible for supervising Defendants Smith and Gabrielson, as required under the first prong in Haynesworth. See Markowitz, 906 F.2d at 103. Second, Mr. Womack has also alleged that Defendant Dodrill had then-current knowledge of Mr. Womack's shackling, Complaint ¶ 22, and that Defendants Dodrill and Lappin "had knowledge of, participated in, or acquiesced in the deprivation of Mr. Womack's right to be free from cruel and unusual punishment." Complaint ¶ 26; see also Complaint ¶¶ 28-32. This allegation, again made with all reasonable inferences, satisfies the second prong under Haynesworth. Third, Mr. Womack has alleged that his shackling caused his pain

and injury, due to Defendants participation or acquiescence in the shackling, <u>see</u> Complaint ¶¶ 18, 26, 28-31, satisfying the final prong in <u>Haynesworth</u>, and the personal involvement prong in <u>Baker</u>.

If these allegations were not enough, Mr. Womack has clearly alleged in his Complaint that Defendant Lappin personally approves all BOP policies, including the policy on the use of restraints. <u>See</u> Complaint ¶ 7. Defendants consistently argue that their conduct was within the bounds set out in the policy. If that is so, then Defendant Lappin has instituted a patently facially unconstitutional policy and must be held to account. He may not act with deliberate indifference to the consequences of the policies he maintains. <u>See</u> <u>A.M. v. Luzerne County Juvenile Det. Ctr.</u>, 372 F.3d 572, 586 (3d Cir. 2004).

Defendant Lappin is further liable if we assume <u>arguendo</u> that the Defendants were in fact following the written policy. That policy requires that Defendants personally notify Defendant Lappin of the use of restraints on Mr. Womack within two days, <u>i.e.</u>, twenty-four days <u>before</u> he was actually removed from the restraints. <u>See</u> P.S. 5566.05, p. 13.  Defendant Lappin thus had ample time to stop this unconstitutional torture, yet he did not do so. Under <u>Baker</u>, he is personally liable to Mr. Womack.

Similarly, Defendant Dodrill was personally notified <u>seventy-seven</u> times that Mr. Womack was held in restraints during those twenty-six days. <u>See</u> <u>COF</u> ¶

102.2.  Additionally, the same policy that required Defendant Lappin to be notified of the use of restraints, required Defendant Dodrill to be notified.  See P.S. 5566.05 p 13. While Defendants have submitted a Declaration by L. Cunningham claiming that Defendant Dodrill was never notified, they have produced no documentation that would support that statement.  See Defendants' Ex. 1. ¶ 5. The only documentation available shows that he was so notified.  See COF ¶ 102.2. This factual dispute cannot be resolved on summary judgment, and all reasonable inferences must be drawn in Mr. Womack's favor. Thus, for purposes of this motion, it must be inferred that Defendant Dodrill was notified but chose not to stop Mr. Womack's unconstitutional torture. Defendant Dodrill should be held liable.

Furthermore, Mr. Womack has alleged there is widespread use of full restraints at USP Lewisburg. Since the Defendants' behavior was part of an ongoing pattern of depriving men of their constitutional right to avoid torture, Defendants Dodrill and Lappin had a duty to step in and correct this ongoing pattern of torture. See Baker and A.M., supra.

For these reasons, the Complaint does not rely on respondeat superior, and Defendants' motion should be denied.

**D.      This Court Should Deny Defendants' Motion to Dismiss, Because Mr. Womack's Complaint States A Claim For Which Relief May Be Granted.**

Defendant argues that Mr. Womack "does not provide any specific information regarding any of the individual defendants in this case and thus, this Court should dismiss that "claim" or at the very least strike it from the Complaint as scandalous matter under Fed. R. Civ. P. 12(f). It is unclear which claim Defendants seek to have struck from the complaint, making it difficult for the Plaintiff to respond. Mr. Womack contends that his Complaint sufficiently alleges particular actions committed by each defendant, and thus satisfies the pleading requirements under Fed. R. Civ. P. 12(b)(6).

The Supreme Court has recently reiterated that 12(b)(6) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" Erickson v. Pardus, 127 S.Ct. 2197, 2200.

Personal involvement of each of the Defendants in this case has already been provided. See supra Sections A-D.  Defendants cite Flanagan v. Shively, 783 F.Supp. 922 (M.D. Pa 1992), which contained a sweeping complaint that alleged that twenty-three defendants violated plaintiff's First, Fifth, Sixth, Eighth, and Fourteenth Amendment rights over a three-year time period. Defs. Brief at 17.

Unlike that case, Mr. Womack specified repeatedly how the five named defendants, over the course of twenty-six days, subjected him to cruel and unusual punishment.

**E.    This Court Should Deny Defendants' Motion, Because Mr. Womack's Complaint Does Not Concern Retaliation.**

Defendants' argument that Mr. Womack is improperly asserting a claim for retaliation is a "red herring" that should be promptly disregarded. Mr. Womack has never alleged that he was transferred in retaliation for filing a grievance, and none of his claims require such a finding. In his Complaint, Mr. Womack simply explained where he is now housed. There is simply no basis for Defendants' assertion that "it appears 'retaliation' is the core of this allegation."[8] Defendants' Brief at 21.

**F.    This Court Should Deny Defendants Summary Judgment, Because They Cannot Meet Their Burden of Proving that Mr. Womack Did Not Exhaust Available Administrative Remedies.**

Mr. Womack agrees with Defendants that the Prison Litigation Reform Act ("PLRA") exhaustion requirement applies to his case, and that this requirement includes a procedural default component. However, Mr. Womack contends that: (1) he exhausted all administrative remedies that were available to him; (2) Defendants are estopped from raising non-exhaustion as a defense; and (3) his Complaint addresses the same matters as his administrative grievances. For these

---

[8]    It is unclear to which allegation Defendant is referring to here.

reasons, there are genuine issues of material fact relating to Mr. Womack's exhaustion of administrative remedies, and this Court should deny Defendants' motion.

### 1.    Mr. Womack Exhausted Available Administrative Remedies.

The PLRA provides: "No action shall be brought with respect to prison conditions … until such administrative remedies <u>as are available</u> are exhausted." 42 U.S.C. § 1997e(a). (emphasis added). "A court may not dismiss for failure to exhaust administrative remedies unless the court determines that such remedies are available." <u>Snider v. Melindez</u>, 199 F.3d 108, 114 (2d Cir. 1999). Because exhaustion of remedies is an affirmative defense, defendants bear the burden of proving that the remedy is available to prisoners. <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119 (9th Cir. 2003) (citing <u>Ray v. Kertes</u>, 285 F.3d 287 (3d. Cir. 2002)).

Defendants have failed to show that administrative remedies actually were available to Mr. Womack during the time in which they maintain he should have filed his original grievance. Specifically, Defendants: (1) failed to inform Mr. Womack of the 20-day limit for filing a formal grievance; (2) kept him, an illiterate prisoner, in solitary confinement and away from viable transcribers; and (3) delayed timely providing materials necessary to file a grievance to Mr. Womack.

The Defendants are required to show that Mr. Womack knew of the regulation by which they now argue he was to abide. "For purposes of exhaustion

of administrative remedies, an institution cannot keep inmates in ignorance of a grievance procedure and then fault them for not using it. A grievance procedure that is not made known to inmates is not an available administrative remedy." <u>Hall v. Sheahan</u>, 2001 U.S. Dist. LEXIS 1194 (N.D. Ill. 2001). "An institution keeps an inmate ignorant of the grievance procedure when correctional officials either fail to inform him of the procedure altogether or fail to provide him with access to materials which could otherwise educate him about use of that process." <u>Arnold v. Goetz</u>, 245 F. Supp. 2d 527, 538 (S.D.N.Y. 2003). Although availability of remedies is initially a question of law, <u>Ray</u>, 285 F.3d 287, when "a plaintiff claims ignorance of the grievance procedure, it becomes a question of fact whether the grievance procedure was an available administrative remedy he was required to exhaust." <u>Hall</u>, 2001 U.S. Dist. LEXIS 1194; see also, <u>Arnold</u>, 245 F. Supp. 2d at 538.

At the time relevant to Mr. Womack's complaint, Mr. Womack was not aware of this 20-day requirement, because BOP employees never informed him of the 20-day limit.  <u>See</u> <u>COF</u> ¶¶ 1.6-1.7.  Moreover, Defendants knew Mr. Womack is illiterate, yet neither they, nor any other BOP officials, made any effort to provide him with assistance. <u>See</u> <u>COF</u> ¶¶ 1.4, 1.7.  Despite Defendants' failure to inform him of the process for filing a grievance, Mr. Womack filed his BP-9 as

soon as possible. See COF ¶ 1.15.  Defendants offer no evidence contrary to these facts. See SOF ¶¶ 1-8.

Further making the remedies unavailable, for thirty days after his twenty-six-day shackling, Defendants denied Mr. Womack, an illiterate inmate, access to the grievance system by keeping him in solitary confinement. See COF ¶ 1.4, 1.8. During this time, Mr. Womack could not file a grievance without the assistance of the very people who were responsible for his constitutional injuries. See COF ¶ 1.10, 1.12. Additionally, for over a week after Mr. Womack was removed from solitary confinement, Defendants denied the grievance system to Mr. Womack by prolonging the delivery of materials necessary to file a grievance.  See COF ¶ 1.13-1.14. See also Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (noting defendants' concession that denial of grievance forms, in a system that required using the form, made the remedy unavailable to the plaintiff). Only later, when Mr. Womack was removed from solitary confinement was he able to receive the necessary assistance. See COF ¶ 1.15.  He then filed the necessary grievance forms as quickly as possible. See COF ¶ 1.15.

For these reasons, this Court should hold that there is a genuine issue of material fact as to the availability of the administrative remedies to Mr. Womack and deny Defendants' Motion for Summary Judgment.

## 2.   Defendants Are Estopped From Raising Exhaustion As A Defense.

In the alternative, this Court should hold that Defendants are estopped from claiming non-exhaustion, due to the structure of the grievance system. In <u>Martin v. Sizemore</u>, the court held defendants estopped from asserting non-exhaustion where they:

> designed their 'complaint' system so that inmates were often allegedly dependent upon the very persons against whom they were registering a complaint to transport the complaint to the front office or to personally and independently of a committee resolve the matter.

2005 WL 1491210 at *4 (E.D. Ky. 2005).  Similarly, USP Lewisburg's grievance system required Mr. Womack to rely on the very prison staff against whom he was complaining, particularly Defendant Gabrielson, to file his grievance.  <u>See</u> COF ¶ 1.12.  Mr. Womack was kept in solitary confinement immediately following his 26-day shackling. <u>See</u> COF ¶ 1.12.  While in solitary confinement, Mr. Womack was required, by the structure of the grievance system, to file his grievance through the very Defendants against whom he was filing a grievance. <u>See</u> COF ¶ 1.12. For this reason, this Court should hold that Defendants are estopped from claiming non-exhaustion, and deny Defendants' motion.

## 3.   Mr. Womack's Complaint Addresses the Same Issues as His Administrative Grievances.

Mr. Womack's grievances concern the same issues as his Complaint.  In both, he asserted that the use of the restraints was cruel and unusual punishment.

Defendants claim that "the record shows that Mr. Womack has not completed the administrative grievance process concerning any of the matters alleged in the complaint," Defs' Brief at 8, yet Mr. Womack's grievances clearly stated that he was complaining about his twenty-six-day confinement in restraints. <u>See</u> <u>COF</u> ¶ 1.16 (BP-8), <u>SOF</u> ¶¶ 2 (BP-9), 4 (BP-10), 7 (BP-11).

## CONCLUSION

Defendants' Motion to Dismiss, Or In The Alternative, For Summary Judgment should be denied.

Respectfully submitted,

Dated:        June 15, 2007            /s/Aaron B. Hewitt
                                       Aaron B. Hewitt
                                       John H. Shenefield
                                       Alexis J. Gilman
                                       MORGAN, LEWIS & BOCKIUS LLP
                                       1111 Pennsylvania Avenue, NW
                                       Washington, D.C. 20001
                                       Telephone: (202) 739-3000
                                       Facsimile: (202) 739-3001
                                       ahewitt@morganlewis.com
                                       Admitted *pro hac vice*

                                       Maxine M. Woelfling
                                       MORGAN, LEWIS & BOCKIUS LLP
                                       14 North Second Street
                                       Suite 1420
                                       Harrisburg, PA 17101-1604
                                       Telephone: (717) 237-5000
                                       Facsimile: (717) 237-5001
                                       mwoelfling@morganlewis.com
                                       PA 20101

                                       Deborah M. Golden
                                       WASHINGTON LAWYERS'
                                       COMMITTEE FOR CIVIL RIGHTS AND
                                       URBAN AFFAIRS
                                       11 Dupont Circle, NW
                                       Suite 400
                                       Washington, D.C. 20036
                                       Telephone: (202) 319-1000
                                       Facsimile: (202) 319-1010
                                       Deborah_Golden@washlaw.org
                                       Admitted *pro hac vice*

                                       Attorneys for Plaintiff