## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID LEE WOMACK**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**JOSEPH V. SMITH, J. OLIVER, KENNETH GABRIELSON, D. SCOTT DODRILL, HARLEY G. LAPPIN, AND CERTAIN UNNAMED BUREAU OF PRISONS OFFICIALS**<br><br>    **Defendants.** | **JURY TRIAL DEMANDED**<br><br><br>No. 1:CV-06-2348 CCC<br><br>Judge Christopher C. Conner |

### FIRST AMENDED COMPLAINT

### NATURE OF THE ACTION

1.      David Lee Womack, a District of Columbia code offender, was convicted and sentenced by the D.C. Superior Court and brings this action for damages, an injunction, and declaratory relief on account of the cruel and unusual punishment he suffered while incarcerated at the Federal Bureau of Prisons ("BOP") United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg").  At USP Lewisburg, the Defendants kept Mr. Womack shackled and bound in full restraints in a secured holding cell for a period of 26 consecutive days.  Defendants held Mr. Womack, without a break or relief, in steel wrist and ankle cuffs tightly bound by chains to a waist chain.  While restrained, Defendants

denied Mr. Womack access to basic personal hygiene needs, exercise, and adequate medical supervision. This treatment constitutes cruel and unusual punishment in violation of the Eighth Amendment of the Constitution of the United States and international standards, and it violates contemporary standards of decency.

## PARTIES

2.     David Lee Womack is a resident of the District of Columbia. Currently housed by the Federal Bureau of Prisons in the New Jersey Department of Corrections as Inmate Number 537-775, Mr. Womack was at all times relevant to the allegations herein a District of Columbia prisoner incarcerated in USP Lewisburg. For identification purposes, the Federal Bureau of Prisons assigned Mr. Womack Registration Number 08497-007.

3.     Joseph V. Smith was at all times relevant to the allegations herein the Warden of USP Lewisburg. Defendant Smith is now retired. This lawsuit is being brought against Defendant Smith in his personal and official capacities.

4.     J. Oliver was at all time relevant to the allegations herein a BOP Corrections Officer with the rank of Captain at USP Lewisburg. This lawsuit is brought against Defendant Oliver in his personal and official capacities.

5.      Kenneth Gabrielson was at all times relevant to the allegations herein a Corrections Officer with the rank of Lieutenant at USP Lewisburg.  This lawsuit is brought against Defendant Smith in his personal and official capacities.

6.      D. Scott Dodrill was at all times relevant to the allegations herein the Regional Director of the Northeast Region of the BOP.  This lawsuit is brought against Defendant Dodrill in his personal and official capacities.

7.      Harley Lappin was at all times relevant to the allegations herein the Director of the BOP.  Defendant Lappin was responsible for, among other things, overseeing the administration of the BOP and approving all BOP policies relating to the use of ambulatory restraints.  This lawsuit is brought against Defendant Lappin in his personal and official capacities.

8.      This lawsuit is also being brought against certain Unnamed BOP Officials, who at all times relevant to the allegations herein held the following positions: Assistant Director, Correctional Programs Division; Assistant Director, Health Services Division; Central Office Correctional Services Administrator; and the Regional Correctional Services Administrator (collectively, the "Unnamed Defendants").  This lawsuit is brought against the Unnamed Defendants in their personal and official capacities.

## JURISDICTION AND VENUE

9.     This action is authorized by the United States Constitution and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), and by 28 U.S.C. §§ 2201 and 2202, to redress deprivations of rights secured by the Eighth Amendment of the United States Constitution.  Original jurisdiction is conferred on this Court by 28 U.S.C. § 1331.

10.    The Middle District of Pennsylvania is a proper venue under 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS UNDERLYING THE COMPLAINT

11.    Mr. Womack is incarcerated by order of the D.C. Superior Court for offenses under the D.C. Code.  In 2001, by order of the United States Congress, the D.C. prison complex in Lorton, Virginia was closed and all inmates were transferred to the authority of the BOP, which is authorized to house D.C. Code offenders in any facility in the country. The BOP placed Mr. Womack in USP Lewisburg, where most of the events giving rise to this complaint occurred.

12.    At all times relevant to the allegations herein, the BOP was operating at 140% of inmate capacity, according to the United States Department of Justice's

("DOJ") own statistics.   Federal prisons like USP Lewisburg faced substantial pressure from the BOP to make room for growing inmate populations.

13.     On the evening of December 8, 2004, Mr. Womack's USP Lewisburg cell in the Special Housing Unit ("SHU") flooded with water due to broken pipes, a condition beyond Mr. Womack's control.   While cleaning up the water in his cell, Mr. Womack accidentally slipped and fell, causing him to hit his head and fall unconscious.   Later that evening, Mr. Womack regained consciousness in the Health Service Unit, where he had received treatment from medical professionals.

14.     The next day, Defendant Gabrielson escorted Mr. Womack back to the damaged cell in the SHU.   Mr. Womack protested the decision to place him in the damaged cell because the broken pipe had caused damage rendering his cell unsafe, and Mr. Womack did not want to risk endangering his safety.

15.     When Defendant Gabrielson attempted to place Mr. Womack in the damaged cell, Mr. Womack resisted.   After a brief struggle, Defendant Gabrielson, with Defendant Smith's authorization, shackled Mr. Womack in full restraints.   A videotape made shortly after the struggle and after Mr. Womack was restrained, shows that Mr. Womack was calm and compliant.   Despite Mr. Womack's benign composure, Defendant Gabrielson, with Defendant Smith's authorization, kept Mr. Womack in full restraints and placed him in an undamaged secured holding cell in the SHU, in accordance with his reasonable request, without further incident.

16.     The restraints into which Defendants Smith and Gabrielson placed Mr. Womack are designed for short-term application. The restraints consisted of steel wrist shackles, which ran through a black steel box on a waist chain, which was in turn chained to a set of steel ankle shackles.

17.     Mr. Womack's wrist and ankle shackles were so tight that they impeded his circulation and caused his hands and feet to immediately and excessively swell.

18.     The chains connecting Mr. Womack's wrist and ankle shackles to the black box on his waist chain were so short that Mr. Womack could not straighten his body when he lay down.  The painful configuration imposed on Mr. Womack by the Defendants required Mr. Womack to sleep while propped up against the walls in a corner of his cell or in other contorted positions.

19.     The shackles were so restrictive that Mr. Womack could not reach behind himself to properly clean himself after using the toilet.

20.     After being placed in his new cell in the SHU, Mr. Womack was told by Defendant Smith that he would receive a cellmate, and Mr. Womack refused. Thereafter, Defendants Smith, Oliver, and Gabrielson continued to shackle Mr. Womack in a secured holding cell in the SHU.

21.    In late 2004 and early 2005, Defendants Smith, Oliver, and Gabrielson applied the same type of full restraints to other inmates who also refused to accept cellmates.

22.    Despite BOP directives to the contrary, and even though Mr. Womack was confined in a secured holding cell, Defendants Smith, Oliver, and Gabrielson – with Defendants Dodrill and Lappin's knowledge and support – unjustifiably punished Mr. Womack for the following 26 consecutive days by keeping him shackled in full restraints.

23.    On December 20, 2004, after eleven days, the wrist shackles broke because Mr. Womack continually tried to alleviate the discomfort from their restrictive application by forcing them open.   Defendant Oliver – with authorization from Defendant Smith – applied a new set of restraints, including double wrist shackles, and placed him back alone in a secured cell in the SHU. Mr. Womack was compliant while Defendant Oliver and BOP staff applied the new restraints, which were as uncomfortable and restrictive as the restraints they replaced.   However, Mr. Womack was noncompliant while Defendant Oliver and BOP staff placed Mr. Womack back in a secured cell in the SHU in the new restraints, because he knew that the continued use of the restraints under the circumstances was totally illegal.   So he asked to be placed in so-called "four-point" restraints, because he knew that it was BOP policy to keep a video camera

trained on a person in four-point restraints.  Mr. Womack wanted a video record of the illegal treatment to which he was being subjected.

24.     On January 3, 2005, Defendant Gabrielson finally removed Mr. Womack from restraints after he had been in them for 26 days.

25.     According to Defendants Gabrielson and Smith, Defendant Smith made the decision to remove Mr. Womack from restraints after Mr. Womack "agreed to attempt to conform to Bureau of Prisons rules."  Declaration of Joseph V. Smith, April 26, 2007; Declaration of K. Gabrielson, April 30, 2007.

26.     But Mr. Womack had not told BOP authorities that he would welcome a cellmate and to this day Mr. Womack does not know why Defendant Gabrielson removed his restraints at that time.

27.     Throughout the 26-day period, USP Lewisburg correctional officers including Defendants Gabrielson and Smith offered to remove Mr. Womack from restraints if he would accept a cellmate.  During this 26-day period, Mr. Womack always declined their offers.

28.     Throughout the 26-day period, Defendants unjustifiably punished Mr. Womack by denying him access to basic personal hygiene needs and exercise.

29.     Throughout the 26-day period, under the supervision of Defendants Smith, Oliver, and Gabrielson, medical professionals at USP Lewisburg also failed to monitor Mr. Womack during at least two five-day periods.

30.     Throughout the 26-day period, in the presence and under the supervision and control of Defendant Smith, BOP staff taunted Mr. Womack by calling him "slave boy" and other racially offensive names.

31.     On or about February 3, 2005, Defendant Gabrielson again asked Mr. Womack if he would accept a cellmate, and Mr. Womack said no.  In response, Defendant Gabrielson – with Defendant Smith's authorization – placed Mr. Womack back into full restraints, again while Mr. Womack remained in a secure cell in the SHU.

32.     On or about February 4, 2005, Mr. Womack was finally broken and could take no more.  Mr. Womack told Defendant Gabrielson that he would accept a cellmate.   Because Mr. Womack agreed to accept a cellmate, Defendant Gabrielson and other USP Lewisburg officers removed Mr. Womack from restraints.

33.     Mr. Womack sustained numerous injuries resulting from his 26-day shackling, including but not limited to multiple open wounds around his wrists and ankles, which resulted from the constant abrasion of his shackles, and structural and nerve damage in his back and shoulders, which resulted from being held for so long in chains that were cinched too tight.  Mr. Womack's injuries have required medical treatment.  Mr. Womack's nerve damage continues to require medical treatment to this day.

34.     The damage is so severe that Mr. Womack's physicians at New Jersey State Prison and outside specialists have recommended spinal surgery to relieve some of Mr. Womack's pain.   To this day BOP has continuously denied approval for the procedure.

## Bureau of Prisons Policies On the Use of Force

35.     Because the excessive use of force presents a serious risk of harm to an inmate, the Bureau of Prisons strictly prohibits the use of force, such as the placement of inmates in restraints, except under specific circumstances, none of which include an inmate's declining an order to accept a cellmate.   *See* BOP Policy Statement ("P.S.") 5566.05.

36.     Prison officials may only use force if it is "necessary to gain control of an inmate who appears to be dangerous because the inmate: (a) assaults another individual; (b) destroys government property; (c) attempts suicide; (d) inflicts injury upon self; or (e) becomes violent or displays signs of imminent violence." *Id.* ¶1.

37.     The Bureau of Prisons directive on inmate discipline indicates that refusing to obey an order to accept a cellmate is a "moderate" offense, punishable by – *inter alia* – up to fifteen days in disciplinary segregation.   *See* P.S. 5270.07.

38.     Under no circumstances may restraints be used to punish inmates.  *See* P.S. 5566.05, ¶6.h(1).

39.     Bureau of Prisons regulations define ambulatory restraints as "approved soft and hard restraint equipment which allow the inmate to eat, drink, and take care of basic human needs without staff intervention."  *See* P.S. 5566.05, ¶9.  As such, ambulatory restraints are designed to allow a prisoner to move around in his cell and to perform his daily living activities.  *See id.*  The restraints used on Mr. Womack were significantly more restrictive than what Bureau of Prisons regulations call "ambulatory restraints."

40.     According to the senior BOP official responsible for training new officers, "inmates can be left in restraints in their cells only so long as they are combative, [and] a lieutenant has to check on the restrained inmates every two hours to determine if they are still physically combative."  Supplemental Report on September 11 Detainees' Allegations of the Abuse at Metropolitan Detention Center in Brooklyn, New York, Office of the Inspector General, DOJ, December 2003 ("Supplemental Report").

41.     In addition, as soon as an officer "determines the inmate has regained physical control and is no longer a threat to himself, other inmates, or property, his restraints must be removed, [and] staff members violate BOP policy if they keep

inmates restrained longer than necessary, or if they restrain inmates to punish or discipline them." *Id.*

42.     Moreover, "if inmates are being disruptive or noncompliant by yelling, it is entirely ineffective to place them in restraints because handcuffing them will not stop them from yelling, [and] the only appropriate action would be to move them to another cell where their yelling cannot be disruptive." *Id.*

43.     Under the Bureau of Prisons directive on the use of force, "all use of force incidents must be reported and investigated to … eliminate the unwarranted use of force." P.S. 5566.05 ¶6.j.

44.     In addition, prison staff must report the use of force directly to the Assistant Director, Correctional Programs Division; Assistant Director, Health Services Division; Central Office Correctional Services Administrator; and the Regional Correctional Services Administrator.  *See* P.S. 5566.05 ¶15.a.

45.     These reporting protocols ensure that BOP management, from prison staff to the Director of the BOP, participates in the decision-making and monitoring process on the use of force and that prison staff does not inappropriately use force on inmates.

## All Defendants Were Deliberately Indifferent to Mr. Womack's Harm

46.    All Defendants knew of the serious risks that the use of force, which includes the shackling of inmates, presents to an inmate's health and safety.

47.    All Defendants knew of the serious risks that full restraints, specifically, present to an inmate's health and safety, including the possibility of serious injury, and even death.

48.    All Defendants knew of, disregarded, and were deliberately indifferent to the serious risk of harm and actual harm that they caused Mr. Womack when they shackled him for 26 consecutive days.

49.    All Defendants deprived Mr. Womack of his right to be free from cruel and unusual punishment under the Eighth Amendment of the United States Constitution when they shackled him for 26 consecutive days.

50.    All Defendants had the authority to stop Mr. Womack's 26-day shackling.

51.    All Defendants were acting under color of federal law when they shackled him for 26 consecutive days.


## Defendants Smith, Oliver, and Gabrielson

52.    On December 9, 2004, Defendant Gabrielson – with Defendant Smith's authorization and after Mr. Womack had regained his composure and

ceased noncompliance – unnecessarily placed Mr. Womack in full restraints while housed in a secured cell in the SHU.

53. Defendants Smith, Oliver, and Gabrielson unnecessarily continued to keep Mr. Womack in restraints while housed in a secured cell in the SHU for the following 26 consecutive days.

54. Defendants Smith, Oliver, and Gabrielson ignored Mr. Womack's compliance and nonviolent behavior while he was kept in restraints in a secured cell in the SHU for hours, and even days, on end.

55. The only legitimate penological purpose for the use of full restraints on an inmate confined in a cell is to gain physical control of the inmate.

56. Defendants Smith, Oliver, and Gabrielson kept Mr. Womack in restraints well beyond the time the restraints became unnecessary to serve the legitimate penological purpose of physically controlling Mr. Womack.

57. Defendants Smith, Oliver, and Gabrielson lacked a penological justification for keeping Mr. Womack in restraints in a secured cell in the SHU for the entire 26-day period.

58. Defendants Smith, Oliver, and Gabrielson used the restraints to punish Mr. Womack for declining to accept a cellmate.

59.     Defendants Smith, Oliver, and Gabrielson kept Mr. Womack in restraints in gross disregard of the unnecessary and serious risk of harm that the 26-day shackling presented to Mr. Womack.

60.     Defendant Smith denied Mr. Womack's grievances and appeals, further affirming that he condoned Mr. Womack's punishment.

## Defendants Dodrill and Lappin and the Unnamed Defendants

61.     Defendants Dodrill and Lappin and the Unnamed Defendants actively participated in the decision-making and monitoring process on the use of restraints on Mr. Womack.

62.     In addition to the Unnamed Defendants, prison staff reported the use of force to Defendants Dodrill and Lappin on multiple occasions during Mr. Womack's 26-day shackling.

63.     On December 9, 2004, Defendant Smith informed Defendants Dodrill and Lappin and the Unnamed Defendants in writing that: (a) Defendant Smith authorized the use of force on Mr. Womack by placing Mr. Womack in restraints while housed in a secure cell in the SHU; and (b) Mr. Womack was compliant when he was placed in restraints and in a secure cell.

64.     On December 20, 2004, Defendant Smith informed Defendants Dodrill and Lappin and the Unnamed Defendants in writing that: (a) Defendant

Smith authorized the continued use of force on Mr. Womack because Mr. Womack broke his restraints; (b) Defendant Smith had already held Mr. Womack in restraints for over ten consecutive days; (c) Defendant Oliver reapplied restraints to Mr. Womack and placed Mr. Womack back in a secured cell in the SHU; (d) the use of restraints was "calculated," "planned" and "ongoing;" and (e) Mr. Womack was compliant during the incident.

65.    On January 4, 2005, Defendant Smith informed Defendants Dodrill and Lappin and the Unnamed Defendants in writing that prison staff removed Mr. Womack from restraints on January 3, 2005, which was 26 days after Defendant Gabrielson placed Mr. Womack in restraints.

66.    From December 9, 2004 to January 4, 2005, Defendant Smith informed Defendant Dodrill at least once every eight hours – for a total of at least seventy-five separate notifications – of the ongoing use of restraints on Mr. Womack.

67.    Despite having been informed that Mr. Womack was compliant when he was put in restraints and was complaint for long periods while in full restraints, Defendants Dodrill and Lappin and the Unnamed Defendants decided to keep Mr. Womack in restraints in gross disregard of the serious risk of harm and actual harm that the unnecessary shackling presented to Mr. Womack.

68.     In addition, Defendants Dodrill and Lappin and the Unnamed Defendants did not reprimand, censure, sanction, or punish in any way Defendants Oliver, Gabrielson or Smith for shackling Mr. Womack, indicating that Defendants Dodrill and Lappin and the Unnamed Defendants condoned Mr. Womack's punishment.

69.     Defendants Dodrill and Lappin and the Unnamed Defendants also did not reprimand, censure, sanction, or punish in any way Defendants Oliver, Gabrielson or Smith for shackling other inmates, despite fully knowing that it was done to punish them as well.

70.     Defendant Dodrill denied Mr. Womack's grievances and appeals, further affirming that he condoned Mr. Womack's punishment.


## USP Lewisburg Regularly Uses Shackles as a Means of Punishment

71.     Inmates housed at USP Lewisburg have been and are regularly placed in full restraints as a means of punishment.

72.     For example, in addition to Mr. Womack's 26-day shackling, USP Lewisburg prison officers admit that they placed James Howard, inmate #13500-116, in so-called "ambulatory restraints" for refusing to accept a cellmate and that they removed him from the restraints when he agreed to accept a cellmate.  *See*

*Howard v. BOP*, et al. 3:CV-05-1372 (M.D. Pa.), Defendants' Statement of Facts ¶¶ 40-67.

73.     For another example, USP Lewisburg prison officers admit that they placed Gregory Williams, inmate # 12778-014, in so-called "ambulatory restraints" for refusing to accept a cellmate and that they removed him from the restraints when he agreed to accept a cellmate.  *See Williams v. Smith*, et al. 3:CV-05-0890 (M.D. Pa.), Defendants' Statement of Facts ¶¶ 21-34.  In addition, Mr. Williams was in restraints for at least 73 consecutive hours and, like Mr. Womack, his restraints were applied so tight that his circulation was cut off and he could not reach behind himself to properly clean himself after using the toilet.  *See Williams*, Defendants' Statement of Facts ¶ 35; Complaint at *6.

74.     The widespread nature of the use of full restraints continues at USP Lewisburg and amounts to a policy of regularly allowing and endorsing this cruel and unjustifiable treatment.

75.     As Regional Director and Director, Defendants Dodrill and Lappin, respectively, participate in overseeing, creating, clearing, and amending all BOP policy.

76.     As part of the policy process, Defendant Lappin, as Director, is vested with the sole authority to approve all BOP Program Statements, Change Notices, and Operations Memoranda.

77.     Defendant Lappin, as Director, certifies annually to the United States Attorney General that the BOP is in compliance with all applicable regulations.

78.     Defendant Lappin was aware of problems with the use of full restraints throughout the BOP.   For example, in 2003 the DOJ Office of the Inspector General warned Defendant Lappin that BOP staff were confused as to proper restraint techniques, and it recommended "that the BOP provide clear, specific guidance for BOP staff members on what restraints and escorting techniques are and are not appropriate."   Supplemental Report.

79.     Defendant Dodrill, as Regional Director, instructs staff within his region on the implementation of BOP policy and oversees the issuances of, and approves Institution Supplements to policy.

80.     Defendant Dodrill, as Regional Director, participates in periodic reviews of all BOP Northeast Region institutions, and, upon information and belief, was aware of the excessive and improper use of restraints at USP Lewisburg.

## COUNT I — Damages

81.    Mr. Womack incorporates herein by reference paragraphs 1 through 80 of this Complaint as though fully set forth at length herein.

82.    Shackling Mr. Womack in full restraints in a secured cell and depriving him of access to personal hygiene needs, exercise, and sufficient medical supervision over a 26-day period constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

83.    All Defendants, by deciding to bind Mr. Womack in full restraints in a secured cell for 26 consecutive days without a legitimate penological justification, participated in, had knowledge of, and condoned the infliction of cruel and unusual punishment of Mr. Womack in violation of the Eighth Amendment of the United States Constitution.

84.    All Defendants, by depriving Mr. Womack of access to basic personal hygiene needs during the 26-day period, participated in, had knowledge of, and condoned the infliction of cruel and unusual punishment of Mr. Womack in violation of the Eighth Amendment of the United States Constitution.

85.    All Defendants, by depriving Mr. Womack of access to sufficient medical supervision during the 26-day period, participated in, had knowledge of, and condoned the infliction of cruel and unusual punishment of Mr. Womack in violation of the Eighth Amendment of the United States Constitution.

86.     All Defendants, by depriving Mr. Womack of any exercise during the 26-day period, participated in, had knowledge of, and condoned the infliction of cruel and unusual punishment of Mr. Womack in violation of the Eighth Amendment of the United States Constitution.

87.     All Defendants were deliberately indifferent to the serious risk of harm that they caused Mr. Womack when they shackled him for 26 consecutive days.

88.     Defendants grossly disregarded Mr. Womack's right to be free from cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

89.     To this day, Mr. Womack continues to suffer pain and injury caused by this unjustified and deliberately cruel punishment.

**WHEREFORE**, Plaintiff David Lee Womack demands that judgment be entered in his favor and against all Defendants for: (a) compensatory and punitive damages as determined by a jury; (b) the costs, including attorneys' fees, incurred in bringing this suit; (c) interest; and (d) such other and further relief as may be deemed appropriate by the Court.

## COUNT II — Declaratory Relief

90.    Mr. Womack incorporates herein by reference paragraphs 1 through 89 of this Complaint as though fully set forth at length herein.

91.    As stated above, all Defendants violated Mr. Womack's Eighth Amendment rights under the United States Constitution by shackling Mr. Womack in full restraints in a secured cell without access to personal hygiene needs, exercise, and sufficient medical supervision for a 26-day period.

92.    Defendants' conduct constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

**WHEREFORE**, Plaintiff David Lee Womack demands that judgment be entered in his favor and against all Defendants for an Order stating that Defendants' conduct deprived Mr. Womack of his right to be free from cruel and unusual punishment under the Eighth Amendment of the United States Constitution, and awarding the costs, including attorneys' fees, incurred in bringing this suit and such other and further relief as may be deemed appropriate by the Court.

## COUNT III — Injunctive Relief

93.    Mr. Womack incorporates herein by reference paragraphs 1 through 92 of this Complaint as though fully set forth at length herein.

94.     Upon information and belief, Defendants' use of restraints as explained remains unchanged, unconstitutional, and against prison policies.

**WHEREFORE**, Plaintiff David Lee Womack demands that judgment be entered in his favor and against all Defendants for an Order requiring Defendants to:  (a) cease the cruel and unjustifiable use of restraints on prisoners; (b) review and if necessary revise prison use of restraint policies; (c) on an ongoing basis, review employee use of restraints and, if necessary, provide continuing education and training regarding the appropriate use of restraints; (d) pay the costs, including attorneys' fees, incurred in bringing this suit and monitoring the injunctive relief; and (e) submit to such other and further relief as may be deemed appropriate by the Court.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.


Dated:  May 29, 2009                    By:  /s/ Aaron B. Hewitt


Aaron B. Hewitt                              Jamie L. Ghen
**MORGAN, LEWIS & BOCKIUS LLP**               Andrew C. Whitney
1111 Pennsylvania Avenue, NW                 **MORGAN, LEWIS & BOCKIUS LLP**
Washington, DC  20004                        1701 Market St.
202.739.3000                                 Philadelphia, PA 19103
202.739.3001 (fax)                           215.963.5000
                                             877.432.9652 (fax)
Deborah M. Golden
**WASHINGTON LAWYERS COMMITTEE**              Maxine M. Woelfling
**FOR CIVIL RIGHTS AND URBAN**                **MORGAN, LEWIS & BOCKIUS LLP**
**AFFAIRS**                                   17 North Second Street, Suite 1420
11 Dupont Circle, NW, Suite 400              Harrisburg, PA 17101-1604
Washington, D.C. 20036                       717.237.5000
202.319.1000                                 717.237.5001 (fax)
202.319.1010 (fax)


*Attorneys for Plaintiff David Lee Womack*

## CERTIFICATE OF SERVICE

I, Aaron B. Hewitt, hereby certify that on this 29th day of May, 2009, a copy of the First Amended Complaint was served via electronic case filing on Defendants Joseph V. Smith, Kenneth Gabrielson, D. Scott Dodrill, and Harley Lappin, through their counsel, Michael Butler, Assistant United States Attorney.  I further certify that I will serve a copy of the First Amended Complaint to the remaining Defendants in this matter in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Middle District of Pennsylvania.

/s/ Aaron B. Hewitt