IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID LEE WOMACK,** | : | CIVIL ACTION NO. 1:06-CV-2348 |
| | : | (Judge Conner) |
| **Plaintiff** | : | |
| | : | |
| v. | : | |
| | : | |
| **JOSEPH V. SMITH,** *et al.,* | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the court are defendants D. Scott Dodrill, Harley G. Lappin, John Vanyur, Newton Kendig,[1] Linda Thomas and John Oliver's motions to dismiss the second amended complaint (docs. 77 and 80) with respect to plaintiff David Lee Womack's Eighth Amendment cruel and unusual punishment claim. For the reasons that follow, the motions will be denied in part and granted in part.

I.  **Statement of Facts**

We see no reason to set forth a detailed statement of facts as the facts were thoroughly addressed in our earlier decision, *Womack v. Smith*, No. 06-2348, 2008 WL 822114 (M.D. Pa. Mar. 26, 2008), and in the Third Circuit's opinion reversing and remanding our prior determination, *Womack v. Smith,* 310 F.App'x 547, 551 (3d Cir. 2009). Any new, relevant allegations pleaded in the second

---

[1] As Mary Ellen Thoms, originally named in the second amended complaint is deceased, the defendants request that Newton Kendig, M.D. be substituted as a party. The court will grant this request for substitution of a party as it is unopposed.

amended complaint will be discussed as necessary.

## II.  **Standard of Review**[2]

Fed. R. Civ. P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).  While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d. 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570, 127 S.Ct. 1955 at 1974.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, - - - U.S. - - - -, 129 S.Ct. 1937, 1949 (2009)(quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965.)  "[L]abels and conclusions" are not enough, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1964-65, and

---

[2] The motions are styled as motions to dismiss, or, in the alternative, for summary judgment.  Because the parties have not presented the court with matters outside the pleadings, the motions will be treated as motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Id.*, 127 S.Ct. at 1965 (quoted case omitted).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." *Fowler*, *supra*, 578 F.3d at 210.  First, we separate the factual elements from the legal elements and disregard the legal conclusions.  *Id.* at 210-11.  Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" *Id.* at 211 (quoted case omitted).

When appropriate, we may also rely on public records, such as court filings.  *See Churchill v. Star Enterprises*, 183 F.3d 184, 190 n.5 (3d Cir. 1999)(citing *Pension Benefit Guaranty Corp. v. White Consolidated Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  The court may also consider "documents whose contents are alleged in the complaint and whose authenticity no party questions," even though they "are not physically attached to the pleading..." *Pryor v. National Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

### III.  Discussion

#### A.  Statute of Limitations and Relating Back

In a *Bivens* action, federal courts must apply the statute of limitations for analogous state actions. *Napier v. Thirty or More Unidentified Federal Agents, Employees, or Officers,* 855 F.2d 1080, 1088 n.3 (3d Cir. 1988).  The governing law here is Pennsylvania's two-year statute of limitations.  42 Pa.C.S.A. § 5524.  The

statute begins to run when the plaintiff knew or should have known of the violation of his rights. *Bougher v. Univ. of Pittsburgh*, 882 f.2d 74, 80 (3d Cir. 1989)(in the context of a 42 U.S.C. § 1983 action).

Federal Rule of Civil Procedure 15 allows amendments to a complaint to relate back to an original complaint.[3] Rule 15(c) provides, in relevant part:

> (1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:
>
> ...
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.
>
> (2) *Notice to the United States.* When the United States or a United States officer or agency is added as a defendant by amendment, the notice requirements of Rule 15(c)(1)(C)(i) and (ii) are satisfied if, during the stated period, process was delivered or mailed to the United States attorney or the United States attorney's designee, to

---

[3] In 2007, Rule 15 was amended as part of a general restyling of the Federal Rules of Civil Procedure. The amendments reconfigured the language and the designations of paragraphs and subsections. The original language of Rule 15(c)(2) can now be found in Rule 15(c)(1)(B).

>    the Attorney General of the United States, or to the officer or agency.

Fed. R. Civ. P. 15(c).  An amended complaint relates back to an original complaint subject to three conditions: "(1) the claims in the amended complaint must arise out of the same occurrences set forth in the original complaint, (2) the party to be brought in by the amendment must have received notice of the action within 120 days of its institution, and (3) the party to be brought in...must have known, or should have known, that the action would have been brought against the party but for a mistake concerning its identity."  *Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006)(citing Fed. R. Civ. P. 15(c)).  All three conditions must be met for an amendment to relate back for purposes of the applicable statute of limitations.  *Singletary v. Pennsylvania Dep't of Corrections*, 266 F.3d 186, 194 (3d Cir.  2001).

   The second amended complaint seeks to add parties to the plaintiff's Eighth Amendment cruel and unusual punishment claim.  As a threshold matter, we note that Womack's amendment does not bring new claims against new parties.  Rather, it adds additional defendants as also being responsible for the alleged deprivation of his constitutional rights.  The newly added defendants argue that claims set forth in the second amended complaint do not arise out of the same conduct, transaction, or occurrence described in the original *allegata*.  However, the court concludes and the record supports that the amended claim clearly arose out of the same conduct, transaction, or

5

occurrence as the original complaint. Therefore, in this case, we are concerned with three questions: (1) did Vanyur, Thomas, Marioana and Oliver receive notice of the action before April 6, 2007; (2) was the notice sufficient to avoid prejudice to their defense on the merits; and (3) did they know (or should have known) by April 6, 2007 that, but for a mistake, Womack would have named them as parties in the original complaint? *See Singletary*, 266 F.3d at 194.

As employees of the Bureau of Prisons ("BOP"), Vanyur, Thomas, Marioana and Oliver are "United States offficer[s]" subject to the provisions of Rule 15(c)(2). The plain language of the rule provides that timely service of the original complaint on the United States attorney or the Attorney General of the United States satisfies the notice requirements of subsections (i) and (ii) of Rule 15(c)(1)(C). Essentially, the rule eliminates the need for the amending party to prove that the new parties had personal notice, because timely notice to the United States attorney, who has and continues to represent the original parties, sufficiently protects the interests of the new defendants. *See Montgomery v. S.I.A. Johnson,* No. 05-131, 2008 WL 4452465, at *5 (W.D. Va. Sept. 27, 2008). In this case, the rationale holds true since the United States attorney has represented the original defendants from the beginning of the case. Therefore, the newly named defendants are not prejudiced in defending on the merits.

The court's docket also shows that Womack filed his original complaint on December 7, 2006. (doc. 1). The complaint was served on the United States

Attorney for the Middle District of Pennsylvania on December 8, 2006. (doc. 11). Then on December 11 and 12, 2006, the complaint was served on the Attorney General and the BOP, respectively. (doc. 9 and 10). Pursuant to Rule 15(c)(2), timely service on the United States attorney, the Attorney General and the BOP before April 6, 2007 satisfies the notice requirement. The newly added parties received constructive notice of the action by virtue of this service.

Defendants Vanyur, Thomas, Marioana and Oliver argue that Womack has not shown that but for a mistake the plaintiff would have named them in the original complaint. However, based the plain language of Rule 15(c)(2), timely service on the United States attorney, Attorney General or agency eliminates the need to satisfy rule 15(c)(1)(C)(i). As previously noted, the record shows the United States attorney, the Attorney General and the BOP received timely service. Accordingly, the court finds that the second amended complaint relates back to the date of the original complaint.

### B. <u>Sovereign Immunity</u>

Sovereign immunity protects the Government from suit except when it has explicitly waived that immunity. *United States v. Bein*, 214 F.3d 408, 413 (3d Cir. 2000). The waiver must be "express[ed] unequivocally in statutory text and will not be implied. *Id.* (citing *Lane v. Pena*, 518 U.S. 187, 192, 116 S.Ct. 2092, 2096 (1996)). "[S]overeign immunity advances a jurisdictional bar which a party may raise at any time, even on appeal, and which [a] court may raise sua sponte."

*Id.* at 412.

Neither the newly added defendants nor the original defendants has raised the issue of sovereign immunity in this action. The plaintiff has claimed damages against all defendants, who are officers of the United States. (doc. 67 ¶¶ 3, 4, 5, 6, 7, 8, 9, 10, 11). "An action against government officials in their official capacities constitutes an action against the United States; and *Bivens* claims against the United States are barred by sovereign immunity...." *Lewal v. Ali*, 289 F.App'x 515, 516 (3d Cir. 2008)(non precedential)(citing *FDIC v. Meyer*, 510 U.S. 471, 483, 114 S.Ct. 996 (1994); *Jaffee v. United States*, 592 F.2d 712, 717 (3d Cir. 1979)). Inasmuch as the plaintiff seeks monetary damages against all defendants in their official capacities, said claims must be dismissed on grounds of sovereign immunity. This court is barred from hearing claims against government officials in their official capacity unless Congress has expressly waived immunity, which it has not. *See Chinchello v. Fenton*, 805 F.2d 126, 130 n.4 (3d Cir. 1986); *see also Consejo de Desarrollo Economico de Mexicali v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007)(*Bivens* claims only can be maintained against a defendant in his or her individual capacity). However, this conclusion does not apply to the plaintiff's claims against the defendants in their individual capacities, and we will therefore address the concomitant argument that certain defendants are shielded by qualified immunity.

C. **Qualified Immunity**

Defendants Lappin, Dodrill, Vanyur, Thomas, Kendig and Marioana have raised the defense of qualified immunity. Defs.' Br. in Supp. at 6. Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006). A right is "clearly established" when the "contours of the right [are] sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987). "Although qualified immunity is generally a question of law and should be considered at the earliest possible state, a genuine issue of material fact may preclude" dismissal on qualified immunity. *Zimmerman v. Schaeffer*, - - - F.Supp.2d - - - -, 2009 WL 2568052, at *23 (M.D. Pa. 2009)(Judge Rambo)(citing *Curley v. Klem,* 298 F.3d 271, 278 (3d Cir. 2002). Recently, the Supreme Court eliminated the rigid two-step analysis required by *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151 (2001) and held that a court may choose which prong of the analysis to examine first. *Pearson v. Callahan,* - - - U.S. - - - -, 129 S.Ct. 808 (2009). Qualified immunity shall be upheld on a 12(b)(6) motion only when the defense is established "on the face of the complaint." *Id.*

The Third Circuit has concluded that genuine issues of fact exist as to whether the original defendants were deliberately indifferent to an excessive risk

9

to the plaintiff's health.  *Womack,* 310 F.App'x at 551.  The only issue the court must decide is whether those constitutional rights were clearly established at the time of the alleged violations.  The defendants argue that keeping an inmate in restraints for 26 days does not amount to a clearly established constitutional violation.  However, the defendants neglect to cite *Hope v. Pelzer,* 536 U.S. 730, 737-38, 122 S.Ct. 2508 (2002), where the Supreme Court held that the prolonged restraint of inmates to a hitching post violates the Eighth Amendment.  *See also Zimmerman*, 2009 WL 2568052 at *23 (citing *Pelzer* for the same proposition).  Therefore, at the time of the alleged constitutional violations, the contours of Eighth Amendment case law were sufficiently clear for a reasonable officer in a position similar to the defendants' positions to conclude that prolonged restraining of a compliant inmate violated the Eighth Amendment.

Next, defendants Lappin, Dodrill, Vanyur, Thomas, Kendig and Marioana argue that the plaintiff has failed to plead sufficient allegations to establish their personal involvement in the violations of his constitutional rights for purposes of qualified immunity.  Defs.' Br. in Supp. at 9.  Specifically, the defendants claim that the Supreme Court's recent decision in *Ashcroft v. Iqbal*, - - - U.S. - - - -, 129 S.Ct. 1937 (2009) demands that the plaintiff must plead and prove that the defendants acted with a discriminatory purpose, not mere knowledge and acquiescence of the violations, in order to avoid the application of qualified immunity.  Specifically, the Supreme Court stated as follows:

> [Respondent] argues that, under a theory of "supervisory liability," petitioners can be liable for "knowledge and acquiescence in their subordinates' use of discriminatory criteria to make classification decisions among detainees." Iqbal Brief 45-46. That is to say, respondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution. We reject this argument. Respondent's conception of "supervisory liability" is inconsistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents. In a § 1983 suit or a *Bivens* action-where masters do not answer for the torts of their servants-the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct. In the context of determining whether there is a violation of clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose *Bivens* liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities.

*Iqbal*, 129 S.Ct. at 1949.

We do not subscribe to the defendants reading of *Iqbal*. The defendants insist that this recent Supreme Court decision overturns longstanding Third Circuit precedent which permits a finding of personal involvement through either allegations of "personal direction or *actual knowledge and acquiescence*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)(emphasis added). The court believes *Iqbal* is distinguishable from the instant case. First, as the Supreme Court makes clear in *Iqbal*, the factors necessary to establish a *Bivens* violation will vary with the constitutional provisions at issue. *Iqbal*, 129 S.Ct. at 1948. The claims at issue in *Iqbal* involved discrimination in contravention of the First and Fifth Amendments to the Constitution. *Id.* at 1944. Supreme Court

11

decisions are clear that in order to make out a claim of discrimination under the First and Fifth Amendments a plaintiff must plead and prove that the defendants acted with "discriminatory purpose." *Id.* In the case *sub judice*, the plaintiff alleges cruel and unusual punishment in violation of the Eighth Amendment, not discrimination. The court's concern here is strictly limited to whether prison officials acted with "deliberate indifference" towards a "substantial risk of serious harm to an inmate." *Farmer v. Brennan,* 511 U.S. 825, 828, 832-37, 114 S.Ct. 1970 (1994). Second, the Supreme Court's own holding is expressly limited to situations involving discrimination. The Court specifically stated that "[i]n the context of determining whether there is a violation of clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose *Bivens* liability ... for *unconstitutional discrimination*...." *Iqbal,* 129 S.Ct. at 1949 (emphasis added). Therefore, the court will apply the knowledge and acquiescence standard in determining whether the plaintiff has sufficiently pleaded personal involvement.

To summarize this standard, we note that a defendant in a civil rights action "must have personal involvement in the alleged wrongs." *Dellarciprete*, 845 F.2d at 1208. Personal involvement can be shown "through allegations of personal direction or of actual knowledge and acquiescence." *Id.* "Allegations of participation or actual knowledge and acquiescence...must be made with appropriate particularity." *Id.* "The restriction on cruel and unusual punishment

contained in the Eighth Amendment reaches non-intervention just as readily as it reaches the more demonstrable brutality of those who unjustifiably and excessively employ [force]." *Smith v. Mensinger*, 293 F.3d 641, 652 (3d Cir. 2002)(discussing how non-intervention can show acquiescence).

The allegations state that on multiple occasions between December 9, 2004 and January 4, 2005 defendant Smith informed Lappin, Dodrill, Vanyur, Thomas, Kendig and Marioana, in writing, that the plaintiff was placed in restraints while he was housed in a secure cell and that the plaintiff was compliant when placed in restraints.  (doc. 67 ¶¶ 66, 67, 68).  In particular, defendant Dodrill was informed at least once every eight hours, a total of 75 separate notifications, that the plaintiff was being restrained.  (doc. 67 ¶ 69). None of the defendants ostensibly took action to alleviate the plaintiff's conditions or reprimanded any of the corrections officers involved. (doc. 67 ¶¶ 70, 71, 72).

We conclude that the allegations are sufficient to subject Defendant Dodrill to potential liability, but are insufficient as to the other defendants.  Here, the averments against Dodrill demonstrate that he was notified no less than 75 times of the prolonged restraint of Womack.  Such continuous and systematic notification indicate that Dodrill knew of the plaintiff's condition.  Additionally, his alleged non-intervention after being notified of the plaintiff's condition indicate that Dodrill acquiesced in the restraining of Womack.

In sharp contrast, Womack's claims against Lappin, Vanyur, Thomas, Kendig and Marioana involve only three notices and the court concludes that the allegations against them are insufficient to show knowledge and acquiescence. Specific and detailed allegations are needed to show that these defendants had personal knowledge in order to sustain a civil rights claims against them. *See Rode*, 845 F.2d at 1208. Womack's theory is that the defendants had personal knowledge based solely on defendant Smith's three communications indicating the plaintiff was restrained. (Doc. 67 ¶¶ 66, 67, 68). The Bureau of Prisons employs thousands of employees and oversees thousands of prisoners. The smaller regional offices also are responsible for thousands of employees and prisoners. These allegations are simply insufficient to show that Lappin, Vanyur, Thomas, Kendig and Marioana had actual knowledge. A holding to the contrary would subject the Director of the Bureau of Prisons and regional administrators to potential liability merely because an inmate or a corrections officer transmits a small number of status updates to regional and national authorities. *See Id.* (holding that the plaintiff's allegations were insufficient to show personal involvement of the Governor of Pennsylvania and the Attorney General since both oversee thousands of employees). Without detailed and specific allegations, the plaintiff's claims against these defendants are insufficient to show they had knowledge of and acquiesced in his treatment. Nevertheless, the court will dismiss the claims against Lappin, Vanyur, Thomas,

14

Kendig and Marioana without prejudice and grant leave to file an amended pleading if discovery reveals additional evidence of actual knowledge.

**D.  Standing for Injunctive Relief**

Defendants Lappin, Dodrill, Vanyur, Thomas, Kendig, Marioana and Oliver argue that the plaintiff lacks standing to pursue injunctive relief.  In response, the plaintiff focuses on the defendants failure to address the standard for subject matter jurisdiction under Rule 12(b)(1).  The plaintiff's reliance on this omission is misplaced since the defendants in their brief clearly stated that they were seeking dismissal for failure to state a claim and for lack of standing.  Defs.' Br. in Supp. at 1.

> In order to satisfy the standing requirement for jurisdiction under Article III,
>
> plaintiffs must demonstrate a "personal stake in the outcome" ... Abstract injury is not enough.  The plaintiff must show that he "has sustained or *is immediately in danger of sustaining some direct injury*" as a result of the challenged official conduct and the injury or *threat of injury must be both* "real and immediate," not "conjectural" or "hypothetical."

*City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02, 103 S.Ct. 1660 (1983)(citations omitted)(emphasis added).  "[A] given plaintiff may have standing to sue for damages yet lack standing to seek injunctive relief."  *Brown v. Fauver*, 819 F.2d 395, 400 (3d Cir. 1987).  Allegations that a plaintiff has suffered from unconstitutional practices may be sufficient for standing to sue for damages, but "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief...."  *Id.* (quoting *O'Shea v. Littleton*, 414

U.S. 488, 495, 94 S.Ct. 669 (1974)). In order to obtain standing, a plaintiff must "establish a real and immediate threat that he would again be [the victim of the allegedly unconstitutional practice.]" *Id.* (citing *Lyons*, 461 U.S. at 105).

The plaintiff's complaint prays for an injunction to "(a) cease the cruel and unjustifiable use of restraints on prisoners; (b) review and if necessary revise prison use of restraint policies; (c) on an going basis, review employee use of restraints and, if necessary, provide continuing education and training regarding the appropriate use of restraints...." (doc. 67 ¶ 98).

After review of the allegations in the complaint, the court concludes that the plaintiff's allegations are presently insufficient for injunctive relief. First, the allegations do not show that Womack is currently being restrained in violation of his Eighth Amendment rights. The second amended complaint indicates that Womack is currently housed in a facility run by the New Jersey Department of Corrections. (doc. 67 ¶ 2). However, the allegations do not describe the extent of BOP's authority over inmates housed in New Jersey facilities. In addition, the second amended complaint does not assert that there are any pending orders to restrain the plaintiff. Moreover, the allegations that the BOP is unconstitutionally employing restraints throughout its jurisdiction is conclusory. The use of restraints on two other prisoners is immaterial to this action. This is not a class action suit. The court is only concerned with the use of restraints against Womack. Finally, the second amended complaint is devoid of allegations that

Womack will suffer immediate and irreparable harm if he is subject to restraint. The court notes that such action is an important and necessary part of maintaining security in the prison setting, and it is only the nature and extent of the restraint which implicates constitutional concerns. Therefore, the court will dismiss the claims for injunctive relief without prejudice to plaintiff's right to reassert his claims should he be subjected to prolonged restraint.

IV.    **Conclusion**

Having found that Womack has failed to properly plead personal involvement against defendants Lappin, Vanyur, Thomas, Kendig and Marioana, the court will grant their motion to dismiss without prejudice and plaintiff is granted a period of thirty (30) days to file a third amended complaint to address the deficiencies described in this memorandum. If no such amended pleading is filed, the case will proceed on all remaining claims. The court will also dismiss the plaintiff's claim for injunctive relief against all defendants. The court will deny the motions to dismiss as to defendants Dodrill and Oliver.

An appropriate order will issue.

     S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:    December 29, 2009

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID LEE WOMACK,** | : | CIVIL ACTION NO. 1:06-CV-2348 |
| | : | (Judge Conner) |
| **Plaintiff** | : | |
| | : | |
| v. | : | |
| | : | |
| **JOSEPH V. SMITH,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 29th day of December, 2009, upon consideration of defendants' motions to dismiss (docs. 77 and 80), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. Defendant Oliver's motion to dismiss (doc. 80) is granted in part and denied in part.

2. Defendants Lappin, Vanyur, Thomas, Kendig and Marioana's motion to dismiss (doc. 77) is granted, but plaintiff is granted leave to file a third amended complaint within thirty (30) days which contains a factual basis, if any, for their actual knowledge. If no such amended pleading is timely filed, the case will proceed on all remaining claims.

3. Defendant Dodrill's motion to dismiss is denied.

4. Plaintiff's claims for injunctive relief against all defendants are dismissed without prejudice to the plaintiff to reassert his claims should he again be subjected to prolonged restraint.

5. The portion of the court's order of September 29, 2009 staying discovery is vacated.

6. A revised scheduling order shall issue by future order of court.


                                                      /S/ Christopher C. Conner
                                                      CHRISTOPHER C. CONNER
                                                      United States District Judge