# EXHIBIT 20



U.S. Department of Justice
Federal Bureau of Prisons

# Program Statement

OPI: CPD
NUMBER: 5566.05
DATE: July 26, 1996
SUBJECT: Use of Force and Application of Restraints on Inmates

RULES EFFECTIVE DATE: July 30, 1996

1. **[PURPOSE AND SCOPE §552.20.** The Bureau of Prisons authorizes staff to use force only as a last alternative after all other reasonable efforts to resolve a situation have failed. When authorized, staff must use only that amount of force necessary to gain control of the inmate, to protect and ensure the safety of inmates, staff and others, to prevent serious property damage and to ensure institution security and good order. Staff are authorized to apply physical restraints necessary to gain control of an inmate who appears to be dangerous because the inmate:

   a. Assaults another individual;
   b. Destroys government property;
   c. Attempts suicide;
   d. Inflicts injury upon self; or
   e. Becomes violent or displays signs of imminent violence.

This rule on application of restraints does not restrict the use of restraints in situations requiring precautionary restraints, particularly in the movement or transfer of inmates (e.g., the use of handcuffs in moving inmates to and from a cell in detention, escorting an inmate to a Special Housing Unit pending investigation, etc.).]

Another example of a situation in which precautionary restraints may be used without being subject to the provisions of this Program Statement is when they are applied by medical staff for medical purposes in accordance with procedures set forth in the Health Services Manual.

The use of restraints for psychiatric reasons, (e.g., to prevent suicide or the infliction of self-injury), however, is subject to the provisions of this Program Statement.

[Bracketed Bold - Rules]
Regular Type - Implementing Information

4H 24

This rule's purpose is not to discourage employees from using force when it is necessary, but to provide guidance and instruction on appropriate procedures to follow when confronted with a situation requiring the use of force.

2. PROGRAM OBJECTIVES. The expected results of this program are:

   a. Force will ordinarily be used only when attempts to gain voluntary cooperation have not been successful.

   b. When force is used, it will be only that which is necessary to subdue an inmate or preserve or restore institution security and good order.

   c. Confrontation avoidance techniques will be used when feasible to avoid calculated use of force situations.

   d. When an inmate must be subdued, the use-of-force team technique will be used when feasible.

   e. Any inmate restrained to a bed will be checked every 15 minutes.

   f. Chemical agents will be used as specified and only after a review of the inmate's medical file.

   g. Restraints will be applied only for appropriate purposes and in appropriate ways.

   h. Appropriate staff will be trained in confrontation avoidance, use of force team technique, use of chemical agents, and application of restraints.

   i. Every use of force incident will be appropriately documented, reported, and reviewed.

3. DIRECTIVES AFFECTED

   a. Directive Rescinded

      PS 5566.04    Use of Force and Application of Restraints on Inmates (06/13/94)

   b. Directives Referenced

      PS 1380.05    Special Investigative Supervisors Manual (08/01/95)
      PS 5214.03    Procedures for Handling of HIV Positive Inmates Who Pose Danger to Others (10/02/87)
      PS 5500.07    Correctional Services Manual (01/31/95)
      PS 5558.12    Firearms and Badges (06/07/96)

PS 5558.09    Use of Federal 203-A Gas Gun with Zuriel Adapter (Stun Gun) (06/01/92)
PS 6000.04    Health Services Manual (12/15/94)

c. Rules cited in this Program Statement are contained in 28 CFR 552.20-27.

4. STANDARDS REFERENCED

a. American Correctional Association Foundation/Core Standards for Adult Correctional Institutions: FC2-4044, FC2-4046, FC2-4047, FC2-4054, C2-4094.

b. American Correctional Association 3rd Edition Standards for Adult Correctional Institutions: 3-4183, 3-4183-1, 3-4191, 3-4194, 3-4195, 3-4198.

c. American Correctional Association Foundation/Core Standards for Adult Local Detention Facilities: FC2-5054, FC2-5055, C2-5124, C2-5127, C2-5128.

d. American Correctional Association 3rd Edition Standards for Adult Local Detention Facilities: 3-ALDF: 3A-17, 3A-17-1, 3A-25, 3A-28, 3A-29, 3A-30.

e. American Correctional Association 2nd Edition Standards for the Administration of Correctional Agencies: 2-CO-3A-01.

5. [TYPES OF FORCE §552.21.] Since inmates occasionally become violent or display signs of imminent violence, it is sometimes necessary for staff to use force and restraints to prevent them from hurting themselves, staff, or others, and/or from destroying property.

[a. Immediate Use of Force. Staff may immediately use force and/or apply restraints when the behavior described in §552.20 constitutes an immediate, serious threat to the inmate, staff, others, property, or to institution security and good order.]

Section 552.20 refers to Section 1 of this Program Statement.

In an immediate use of force situation, staff may respond with or without the presence or direction of a supervisor.

[b. Calculated Use of Force and/or Application of Restraints. This occurs in situations where an inmate is in an area that can be isolated (e.g., a locked cell, a range) and where there is no immediate, direct threat to the inmate or others. When there is time for the calculated use of force or application of restraints, staff must first determine if the situation can be resolved without resorting to force (see §552.23).]

Section 552.23 refers to Section 7 of this Program Statement.

(1) <u>Circumstances</u>. Based on experience, calculated rather than immediate use of force is feasible in the majority of incidents correctional practitioners encounter. Staff must use common sense and good correctional judgment in each situation to determine when there is time for the calculated use of force.

The safety of persons involved is the major concern. Obviously, immediate (and unplanned) use of force by staff is required if an inmate is trying to self-inflict life-threatening injuries, or is attacking a staff member or another inmate. If those circumstances are not present, staff should ordinarily employ the principles of calculated use of force.

Calculated use of force would be appropriate, for example, if the inmate is in a cell or in an area where the door or grill is (or can be) secured, even where an inmate is verbalizing threats or brandishing a weapon, provided staff believe there is no immediate danger of the inmate hurting self or others. The calculated use of force situation permits the use of other staff (e.g., psychologists, counselors) in attempting to resolve situations in a non-confrontational manner.

(2) <u>Documentation</u>. The confrontation avoidance process will be documented in writing for placement in the inmate's central file, and will be videotaped to include an introduction of all staff participating in the confrontation avoidance group and the actual confrontation avoidance process.

This tape and documentation will be made part of the investigation package for the After Action Review process (see Sections 15 and 16). Additionally, the Warden shall forward each videotape of each incident where force is used to the appropriate Regional Director, within four working days of the incident unless requested earlier by the Regional Director.

The entire interaction shall be documented in writing in the FOI Exempt section of the inmate's central file to reflect each staff member's actions and response while participating in the confrontation avoidance process.

[c. <u>Use of Force Team Technique</u>. If use of force is determined to be necessary, and other means of gaining control of an inmate are deemed inappropriate or ineffective, then the Use of Force Team Technique shall be used to control the inmate and to apply soft restraints, to include ambulatory leg restraints. The Use of Force Team Technique ordinarily involves trained staff, clothed in protective gear, who enter the inmate's area in tandem, each with a coordinated responsibility for helping achieve immediate control of the inmate.]

See the Correctional Services Manual, Chapter 2, Section 206 (Page 11) Use of Force Team Techniques.

[d. Exceptions. Any exception to procedures outlined in this rule is prohibited, except where the facts and circumstances known to the staff member would warrant a person using sound correctional judgment to reasonably believe other action is necessary (as a last resort) to prevent serious physical injury, or serious property damage which would immediately endanger the safety of staff, inmates, or others.]

Use of Force incidents shall be documented and reviewed, and if the provisions of this directive are violated, such review shall also determine if a person using sound correctional judgment would reasonably believe the situation required an exceptional response and if the actions taken were reasonable and appropriate. The Warden (or Acting Warden), Associate Warden (over Correctional Services), Captain, and Health Services Administrator or designee shall comprise the After-Action Review Team reviewing the incident on the next work day after the incident (see Section 16).

The Warden shall personally document to the Regional Director within two work days after the inmate has been released from restraints (if applicable), that the review has occurred and that the use of force was either appropriate or inappropriate. This rule applies to all instances involving the use of force, except for the use of firearms (see the Program Statements on Firearms and Badges and the Correctional Services Manual for more specific procedures on Use of Force Team Techniques).

6. [PRINCIPLES GOVERNING THE USE OF FORCE AND APPLICATION OF RESTRAINTS §552.22

   a. Staff ordinarily shall first attempt to gain the inmate's voluntary cooperation before using force.]

See Section 7 of this Program Statement for confrontation avoidance procedures prior to any calculated use of force.

   [b. Force may not be used to punish an inmate.

   c. Staff shall use only that amount of force necessary to gain control of the inmate. Situations when an appropriate amount of force may be warranted include, but are not limited to:

       (1) Defense or protection of self or others;

       (2) Enforcement of institutional regulations; and

       (3) The prevention of a crime or apprehension of one who has committed a crime.

d. When immediate use of restraints is indicated, staff may temporarily apply such restraints to an inmate to prevent that inmate from hurting self, staff, or others, and/or to prevent serious property damage. When the temporary application of restraints is determined necessary, and after staff have gained control of the inmate, the Warden or designee is to be notified immediately for a decision on whether the use of restraints should continue.]

Restraints should be used only when other effective means of control have failed or are impractical.

Designee refers to the Acting Warden or Administrative Duty Officer.

[e. Staff may apply restraints (for example, handcuffs) to the inmate who continues to resist after staff achieve physical control of that inmate, and may apply restraints to any inmate who is placed under control by the Use of Force Team Technique. If an inmate in a forcible restraint situation refuses to move to another area on his own, staff may physically move that inmate by lifting and carrying the inmate to the appropriate destination.]

Staff are cautioned not to use the restraints for lifting or carrying an inmate.

[f. Restraints should remain on the inmate until self-control is regained.

g. Except when the immediate use of restraints is required for control of the inmate, staff may apply restraints to, or continue the use of progressive restraints on, an inmate while in a cell in administrative detention or disciplinary segregation only with approval of the Warden or designee.

h. Restraint equipment or devices (e.g., handcuffs) may not be used in any of the following ways:

   (1) As a method of punishing an inmate;

   (2) About an inmate's neck or face, or in any manner which restricts blood circulation or obstructs the inmate's airways;]

Tape shall not be placed around an inmate's mouth, nose, or neck. Staff protective gear provides sufficient insulation from an inmate's spitting or biting; therefore, no effort should be made by use of towels, sheets, blankets, hosiery, or masks or any other device, to prevent an inmate from spitting or biting.

   [(3) In a manner that causes unnecessary physical pain or extreme discomfort;]

* Staff in general, and the Lieutenant-in-charge in particular, shall ensure that unnecessary pressure is not placed on an inmate's body in applying restraints (for example, the inmate's chest, back or neck). *

While the proper application of restraints may result in some discomfort, examples of prohibited uses of restraints would include, but are not limited to: hogtying, unnecessarily tight restraints, or improperly applied restraints. All inmates placed in restraints should be closely monitored.

Hard restraints (i.e., steel handcuffs and leg irons) are to be used only after soft restraints prove ineffective, or a past history of ineffectiveness exists.

[(4) To secure an inmate to a fixed object, such as a cell door or cell grill, except as provided in §552.24.]

Section 552.24 refers to Section 10 of this Program Statement.

[i. Medication may not be used as a restraint solely for security purposes.

j. All incidents involving the use of force and the application of restraints (as specified in § 552.27) must be carefully documented.]

Section 552.27 refers to Section 15 of this Program Statement. This documentation includes, whenever practicable, filming the incident and having it reviewed by the After-Action Review Committee of the institution. Reports and videotapes of the incident must be reviewed, audited, and monitored by Regional and Central Office staff.

Use of force incidents must be reported and investigated both to protect staff from unfounded allegations and to eliminate the unwarranted use of force.

7. [CONFRONTATION AVOIDANCE PROCEDURES §552.23. Prior to any calculated use of force, the ranking custodial official (ordinarily the Captain or shift Lieutenant), a designated mental health professional, and others shall confer and gather pertinent information about the inmate and the immediate situation. Based on their assessment of that information, they shall identify a staff member(s) to attempt to obtain the inmate's voluntary cooperation and, using the knowledge they have gained about the inmate and the incident, determine if use of force is necessary.]

Ordinarily, in calculated use of force situations, there is time for the Captain or Shift Lieutenant, the designated mental health professional, Chaplain, or anyone else so designated, such as the

inmate's Unit Manager, Case Manager, or Counselor, to confer with each other and to assess the situation.

This discussion may be accomplished by telephone or in person, the purpose being to gather relevant information about the inmate's medical/mental history, any recent incident reports or situations which may be contributing to the inmate's present state of mind (e.g., a pending criminal prosecution or sentencing, the recent death of a loved one, or a divorce).

This assessment could include discussions with staff who are familiar with the inmate's background or present status. This information may provide insight into the cause of the inmate's immediate agitation, and assist in the identification of staff members who may have some rapport with the inmate, or who are more likely to be successful in attempting to reason with the inmate.

8. USE OF FORCE SAFEGUARDS. To prevent injury and exposure to communicable disease in calculated use of force situations, the following shall occur.

   a. Staff participating in any calculated use of force, including those participating in the Use of Force Team technique, shall:

      (1) Wear appropriate protective gear, and

      (2) Receive training on communicable diseases during Annual Refresher Training.

   b. Personnel with a skin disease or skin injury shall not be permitted to participate in a calculated use of force action.

   c. Whenever possible, in an immediate use of force circumstance, staff should obtain and use appropriate protective equipment (helmets with face shields, jumpsuits, gloves, pads, etc.) prior to intervening:

      (1) If an emergency situation results in a use of force, precautions such as clothing help to decrease the chances of transmission.

      (2) Any time staff members are going into a cell or area where there is reason to believe that blood or body fluids would be present, protective devices shall be available and shall be used by those staff entering that area.

   d. Following any use of force incident, any area where there is spillage of blood, or other body fluids, shall be sanitized immediately upon the authorization of the Special Investigative Supervisor (SIS) or Shift Supervisor, who must first make the determination as to whether there is a need to preserve evidence;

*     (1) All blood and body secretions shall be immediately removed in an appropriate waste disposal container and the area washed with an antiseptic solution, pursuant to the Program Statement on Procedures for Handling of HIV Positive Inmates Who Pose a Danger to Others and the Health Services Manual. *

    (2) Standard sanitation measures should be implemented following any use of force incident where there has been a spillage of blood or other body fluids by any inmate or staff member involved. Staff or inmates wearing protective gloves should immediately sanitize the cell walls or floors, etc., with an appropriate disinfectant. In addition, any clothing that has been contaminated with these fluids, including the equipment and clothing of the staff involved in the use of force, should be immediately disinfected or destroyed, as appropriate.

9. **PROGRESSIVE AND AMBULATORY RESTRAINTS**. For the purposes of this Program Statement, progressive restraints are defined as the process of using the least restrictive restraint method to control the inmate as deemed necessary for the situation. Based on the inmate's behavior, more restrictive and secure restraints may be used. Ambulatory restraints are defined as approved soft and hard restraint equipment which allow the inmate to eat, drink, and take care of basic human needs without staff intervention.

When it is necessary to restrain an inmate for longer than eight hours, the Regional Director or Regional Duty Officer is to be notified telephonically by the Warden or designee or institution Administrative Duty Officer.

Ambulatory restraints should initially be used to restrain an inmate if deemed appropriate for the situation. If the situation dictates the need for more restrictive or secure restraints, based on the inmate's behavior, staff should make the determination as to what form of restraint method should be used; i.e., hard restraints without waist chain or waist belt, hard restraints with waist chain or waist belt, four-point soft restraints with hard restraints used for securing the inmate to the bed, and finally, four-point hard restraints.

In situations involving highly assaultive and aggressive inmates, progressive restraints may be used as an intermediate measure in placing the inmate into, or removing an inmate from, four-point restraints.

10. [**USE OF FOUR-POINT RESTRAINTS** §552.24. When the Warden determines that four-point restraints are the only means available to obtain and maintain control over an inmate, the following procedures must be followed:

JA 0202

a. Soft restraints (e.g., vinyl) must be used to restrain an inmate, unless:

   (1) Such restraints previously have proven ineffective with respect to that inmate, or

   (2) Such restraints are proven ineffective during the initial application procedure.]

This may not be delegated below the Warden's level.

[b. Inmates will be dressed in clothing appropriate to the temperature.

c. Beds will be covered with a mattress, and a blanket/sheet will be provided to the inmate.]

Under no circumstance shall an inmate be allowed to remain naked or without bed covering placed over the inmate's body unless determined necessary by qualified health personnel.

[d. Staff shall check the inmate at least every 15 minutes, both to ensure that the restraints are not hampering circulation and for the general welfare of the inmate. When an inmate is restrained to a bed, staff shall periodically rotate the inmate's position to avoid soreness or stiffness.]

Qualified health personnel shall evaluate the inmate to be restrained to a bed to determine the position the inmate should be placed in. When qualified health personnel are not immediately available, the inmate shall be placed in a "face-up" position until evaluated by qualified health personnel. Inmates shall be checked every 15 minutes and this information shall be documented.

[e. A review of the inmate's placement in four-point restraints shall be made by a Lieutenant every two hours to determine if the use of restraints has had the required calming effect and so that the inmate may be released from these restraints (completely or to lesser restraints) as soon as possible. At every two-hour review, the inmate will be afforded the opportunity to use the toilet, unless the inmate is continuing to actively resist or becomes violent while being released from the restraints for this purpose.]

Ordinarily, the Shift Lieutenant makes the decision to release an inmate or apply lesser restraints. It shall never be delegated below the Lieutenant's level.

[f. When the inmate is placed in four-point restraints, qualified health personnel shall initially assess the inmate to ensure appropriate breathing and response (physical or verbal). Staff shall also ensure that the restraints have not restricted

or impaired the inmate's circulation. When inmates are so restrained, qualified health personnel ordinarily are to visit the inmate at least twice during each eight-hour shift. Use of four-point restraints beyond eight hours requires the supervision of qualified health personnel. Mental health and qualified health personnel may be asked for advice regarding the appropriate time for removal of the restraints.]

In institutions without 24-hour medical coverage, the Shift Lieutenant shall ordinarily conduct the checks, if medical

JA 0204

coverage is not available. This does not apply to the use of four-point restraints beyond eight hours, which requires medical supervision. If the Shift Lieutenant observes problems, health services staff shall be contacted for further instructions.

[g. When it is necessary to restrain an inmate for longer than eight hours, the Warden (or designee) or institution administrative duty officer shall notify the Regional Director or Regional Duty Officer by telephone.]

The notification is to be repeated for each consecutive eight hour period the restraints remain in place. Documentation as to the reasons for each placement in four-point restraints, regardless of the duration, shall be provided to the Regional Director or Regional Duty Officer on the following work day.

11. [USE OF CHEMICAL AGENTS OR NON-LETHAL WEAPONS §552.25. The Warden may authorize the use of chemical agents or non-lethal weapons only when the situation is such that the inmate:

   a. Is armed and/or barricaded; or,

   b. Cannot be approached without danger to self or others; and,

   c. It is determined that a delay in bringing the situation under control would constitute a serious hazard to the inmate or others, or would result in a major disturbance or serious property damage.]

Qualified health personnel shall be consulted prior to staff using chemical agents, pepper mace, or non-lethal weapons, unless the circumstances are such that immediate use is necessary. Whenever possible, the inmate's medical file should first be reviewed to determine whether the inmate has any diseases or condition which would be dangerously affected if the chemical agent, pepper mace, or non-lethal weapon was used. This includes, but is not limited to: asthma, emphysema, bronchitis, tuberculosis, obstructive pulmonary disease, angina pectoris, cardiac myopathy, or congestive heart failure.

Reference the Correctional Services Manual, Chapter 2, Section 207 (Page 13).

13. [MEDICAL ATTENTION IN USE OF FORCE AND APPLICATION OF RESTRAINTS INCIDENTS §552.26

   a. In immediate use of force situations, staff shall seek the assistance of mental health or qualified health personnel upon gaining physical control of the inmate. When possible, staff shall seek such assistance at the onset of the violent behavior. In calculated use of force situations, the use of force team leader shall seek the guidance of qualified health personnel

(based on a review of the inmate's medical record) to identify physical or mental problems. When mental health staff or qualified health personnel determine that an inmate requires continuing care, and particularly when the inmate to be restrained is pregnant, the deciding staff shall assume responsibility for the inmate's care, to include possible admission to the institution hospital, or, in the case of a pregnant inmate, restraining her in other than face down four-point restraints.

    b. After any use of force or forcible application of restraints, the inmate shall be examined by qualified health personnel, and any injuries noted, immediately treated.]

    If any staff involved in a use of force reports an injury, qualified health personnel should provide immediate examination and initial emergency treatment.

14. <u>USE OF FORCE IN SPECIAL CIRCUMSTANCES</u>. In certain extenuating circumstances, and after confrontation avoidance has failed or has proven to be impractical, staff may be forced to make a decision, such as whether to use force on a pregnant inmate or an aggressive inmate with open cuts, sores, or lesions. Special cases such as mentally ill, handicapped, or pregnant inmates, after consultation with the Clinical Director, must be carefully assessed to determine whether the situation is grave enough to require the use of physical force.

    a. <u>Pregnant Inmates</u>. When pregnant inmates have to be restrained, necessary precautions to ensure the fetus is not harmed shall be taken. Qualified health personnel shall prescribe the necessary precautions, including decisions about the manner in which the inmate is to be restrained, whether she needs a qualified health personnel member present during the application of restraints, or whether the inmate should be restrained at the institutional hospital or a local medical facility.

    b. <u>Inmates with Wounds or Cuts</u>. Aggressive inmates with open cuts or wounds who have attempted to harm themselves or others should be carefully approached, with staff wearing prescribed necessary protective gear. A full body shield should also be used in these instances to protect staff, if force is deemed necessary. Aggressive inmates, after being placed in restraints, should be placed in administrative detention and separated from all other inmates. Inmates of this status ordinarily shall remain in administrative detention until cleared to return to the general population by the Captain, Chief Psychologist, and the Clinical Director, and after the Warden's approval.

15. [DOCUMENTATION OF USE OF FORCE AND APPLICATION OF RESTRAINTS INCIDENTS §552.27. Staff shall appropriately document all incidents involving the use of force, chemical agents, or non-lethal weapons. Staff shall also document, in writing, the

[use of restraints on an inmate who becomes violent or displays signs of imminent violence. A copy of the report shall be placed in the inmate's central file.]

   a. <u>Report of Incident</u>. A Use of Force Report (EMS-583, Attachment A) is to be prepared on the use of force, chemical agents, pepper mace, application of progressive restraints, or non-lethal weapons. This reporting requirement includes the application of progressive restraints to an inmate when the inmate is compliant with the placement into restraints. The report is to establish the identity of inmates, staff, and others involved, and is to describe the details of the incident. The report (to include mental health/medical reports) must be submitted to the Warden or designee by no later than the end of that tour of duty. A copy of the report is to be placed in the inmate's central file. Copies are also to be sent within two work days to:

      (1) Assistant Director, Correctional Programs Division;
      (2) Assistant Director, Health Services Division;
      (3) Central Office Correctional Services Administrator;
      (4) Regional Director; and,
      (5) Regional Correctional Services Administrator.

   A report is not necessary for the general use of restraints (for example, the routine movement or transfer of inmates).

   b. <u>Four-Point Restraints Report</u>. Fifteen minute checks of inmates placed in four-point restraints shall be recorded in a bound ledger and recorded on the Special Housing Unit Report form (BP S292). Documentation of 15-minute checks shall continue until the four-point restraint placement is terminated.

   During reviews of inmates' status while in four-point restraints (i.e., every two-hour review where the inmate is allowed to use the toilet facilities and his or her behavior is evaluated), each negative response by the inmate shall be documented in the bound ledger.

   c. <u>Videotape of Use of Force Incidents</u>. Staff shall immediately obtain and record with a video camera any use of force incident, unless it is determined that a delay in bringing the situation under control would constitute a serious hazard to the inmate, staff, or others, or would result in a major disturbance or serious property damage. This video recording shall also ordinarily include any medical examination following the application of restraints, use of chemical agents, use of pepper mace, and/or use of non-lethal weapons.

   Calculated use of force shall be videotaped following the sequential guidelines presented in the Correctional Services Manual. The original videotape must be maintained and secured as evidence in the SIS Office. A copy of every calculated use of force videotape, after review by the Warden (within four work

days of the incident), unless requested by the Regional Director sooner, shall be immediately provided to the Regional Director for review. The Regional Director shall forward videotapes of questionable or inappropriate cases immediately to the Assistant Director, Correctional Programs Division, Central Office, for review.

When an immediate threat to the safety of the inmate, staff or others, or to property, requires an immediate response, the staff members have an obligation to obtain a camera and begin recording the event as soon as it is feasible. Once control of the situation has been obtained, staff should record information about injuries, a description of the circumstances that gave rise to the need for immediate use of force, and the identification of the inmates, staff, and others involved.

   d. <u>Documentation Maintenance</u>. The Captain shall maintain all documentation, including the videotape and the original EMS 583, for a minimum of two and one-half years. A separate file shall be established on each use of force incident.

16. <u>AFTER-ACTION REVIEW OF USE OF FORCE AND APPLICATION OF RESTRAINTS INCIDENTS</u>. Following any incident involving the use of force, whether calculated or immediate, and the application of restraints, if applicable, the Warden, Associate Warden (responsible for Correctional Services), Captain, and the Health Services Administrator shall meet and review the incident. This review is to assess the reasonableness of the actions taken (e.g., if the force used was appropriate and in proportion to the inmate's actions).

They should gather relevant information, determine if policy was followed, and then complete a standard After-Action Report (EMS 586, Attachment B), recording the nature of their review and findings. The EMS 586 should be submitted within two working days after the inmate is removed from restraints.

   a. <u>Videotape Review</u>. The After-Action Review Team should also review the video tape for the following:

      (1) Professionalism of the Lieutenant during the Forced Cell Team technique should be evident. The Lieutenant must be in the proper Correctional Services uniform. Lieutenants should not be dressed in riot gear or wearing chains or jewelry or other ornamentation that would detract from a professional appearance. The actions of staff during a use of force situation shall be narrated by the Lieutenant supervising the situation. In addition, the Lieutenant should face the video camera and speak normally;

(2) Use of Force Team members shall wear appropriate protective gear. This ordinarily includes:

- helmet with face shield,
- coveralls,
- flack vest,
- arm and knee pads, and
- lineman gloves.

Occasionally, a plastic shield may be used to prevent staff or inmate injury. No other piece of equipment or device is authorized. Equipment not authorized includes: towels, tape, surgical mask, hosiery, etc. Each Use of Force Team member should introduce himself/herself on the video and describe his or her responsibilities;

(3) Use of Force Team members, as they enter the cell or area, must use only the amount of force necessary to subdue the inmate. If the inmate is already restrained, voluntarily submits to the placement of restraints, discontinues his or her violent behavior, etc., it may be necessary for the Use of Force Team to minimize the amount of force used.

The Lieutenant in charge of the Use of Force Team shall ensure only the force necessary is used, based on the nature of the situation. The Lieutenant must clearly monitor the actions of the inmate and the team members. The Lieutenant should not be actively involved in subduing the inmate, unless it is determined necessary to prevent staff or inmate injury;

(4) The application of restraints by team members must be reviewed to ensure no more pressure than necessary is applied to the inmate's thorax (chest and back), throat, head and extremities;

(5) The amount of time it takes for team members to restrain the inmate should be reviewed. If an excessive amount of time elapses; i.e., more than five minutes, and the inmate is not struggling with staff, it may be that team members are not adequately trained;

(6) Team members should not remove protective gear while inside the cell or area. Protective gear must remain on team members during the entire process;

(7) The videotape must run continuously during the entire process. If there are breaks or apparent missing sequences in the video, reviewers must question why and document the propriety of the explanation;

(8) A member of the health services staff must promptly examine the inmate after the move and the findings must be noted by that person on the videotape;

(9) When a Stun Gun, chemical agents, or pepper mace is used, the method of use must be determined. Review Team members should ensure that use of these devices was in accordance with existing policy; i.e., the Program Statements on the Use of Federal 203-A Gas Gun with Zuriel Adapter (Stun Gun) and the Correctional Services Manual;

(10) Prior to the team entering the cell, the inmate was given the opportunity to voluntarily submit to the placement of restraints. If he or she submits, then team action is ordinarily unnecessary; and,

(11) Inappropriate conversations (derogatory, demeaning, taunting, etc.) occurring between team members and the inmate, or between team members and individuals outside of the cell or area.

   b. <u>Report Completion</u>. When this review is completed, an After-Action Review Report (EMS-586, Attachment B) shall be completed, as soon as possible, not later than two working days after the inmate has been removed from restraints. Accordingly, the length of time an inmate is kept in restraints is appropriate. This will ensure that staff having relevant information will be available and that any necessary medical follow-up can be immediately provided to ascertain the nature of any injuries involved.

The Warden or designee shall then personally attest by his or her signature that the review has taken place and that the use of force was either appropriate or inappropriate.

   c. <u>Further Investigation</u>. The reviewers should also decide if the matter requires further investigation, and whether the incident should be referred to the Office of Internal Affairs, the Office of the Inspector General, or the FBI. If deemed appropriate, the Warden's rationale for such an assessment shall be included. Copies of this report shall be forwarded to the Assistant Director, Correctional Programs and the Regional Director.

   d. <u>Report on Restraints Use</u>. A report is not necessary for the general use of restraints. For example, a report is not required in the routine movement or transfer of inmates.

17. <u>TRAINING IN THE CONFRONTATION AVOIDANCE/USE OF FORCE TECHNIQUE</u>. In order to control any potential situation involving aggressive inmates, all staff must be made aware of their responsibilities through ongoing training. At a minimum, training must cover:

- communication techniques,
- cultural diversity,
- dealing with the mentally ill,
- confrontation avoidance procedures,
- the application of restraints (progressive and hard), and
- reporting procedures.

a. <u>Training Topics</u>. A sufficient number of institution staff should be trained annually in both confrontation avoidance procedures and forced cell move techniques. Each staff member participating in a calculated forced cell move must have documented proof of annual training in these areas. Training should also include specific information pertaining to special situations.

b. <u>Restraints Training</u>. Staff should be thoroughly trained in the use of soft and hard restraints. Soft restraints can be cumbersome to apply on an inmate, if proper training is not provided. Soft restraints such as vinyl or leather restraints should be used prior to applying hard restraints. For pregnant inmates, the approved vinyl or leather restraint belt should be used instead of a metal waist chain, whenever possible, to prevent injury to the inmate or fetus.

\s\
Kathleen M. Hawk
Director

REPORT OF INCIDENT (EMS FORM 583 - MARCH 1996)

SECTION 1: GENERAL INFORMATION
==================================

```
!_____
!INSTITUTION:      !REGION:  !REPORT DATE:      !SUBMITTED BY:
!                  !         !                  !
!_____!_____!_____!_____
!DATE/TIME OF INCIDENT:           ! FBI NOTIFIED:   ( ) YES ( ) NO
!                                 !USMS NOTIFIED:   ( ) YES ( ) NO
!_____!_____
! PROHIBITED ACT CODE(S):         !INCIDENT REPORT NUMBER(S):
!                                 !
!_____!_____
!TYPE OF INCIDENT:
!    ( ) ESCAPE OR ( ) ATTEMPTED ESCAPE (COMPLETE SECTIONS 1, 2, & 6)
!    ( ) ASSAULT, INMATE ON INMATE (COMPLETE SECTIONS 1 & 6)
!    ( ) ASSAULT, INMATE ON STAFF (COMPLETE SECTIONS 1 & 6)
!    ( ) INMATE DEATH (COMPLETE SECTIONS 1, 3, & 6)
!    ( ) FIGHT (COMPLETE SECTIONS 1 & 6)
!    ( ) CELL FIRE (COMPLETE SECTIONS 1 & 6)
!    ( ) SELF MUTILATION (COMPLETE SECTIONS 1 & 6)
!    ( ) SUICIDE ATTEMPT (COMPLETE SECTIONS 1 & 6)
!    ( ) INTRODUCTION OF CONTRABAND (COMPLETE SECTIONS 1 & 6)
!    ( ) DISRUPTIVE BEHAVIOR (COMPLETE SECTIONS 1 & 6)
!    ( ) WEAPONS DISCHARGE (COMPLETE SECTIONS 1, 4, & 6)
!    ( ) USE OF FORCE (COMPLETE SECTIONS 1, 5 & 6)
!    ( ) MISCELLANEOUS (SPECIFY) (COMPLETE SECTIONS 1 & 6)
!    _____
!_____
! WAS WEAPON USED? ! IF WEAPON WAS USED, WHAT TYPE?
! ( ) YES  ( ) NO  !
!_____!_____
                        !           !SEX!     !    ! CIMS    !MGMT INT
!INMATE(S) INVOLVED      ! REG. NO. !M/F!RACE !CITZ! CATEGORY! GROUP
!_____
!1.                      !          !   !     !    !         !
!2.                      !          !   !     !    !         !
!3.                      !          !   !     !    !         !
!4.                      !          !   !     !    !         !
!5.                      !          !   !     !    !         !
!_____
!RACIAL/ETHNIC/SECURITY THREAT GROUP CONFLICT:
!_____
!     INMATE NAME         ! REG. NO.!   GROUP    !SUSPECT/CONFIRMED
!_____
!1.                       !         !            !
!2.                       !         !            !
!3.                       !         !            !
!_____
!STAFF INJURIES: ( )YES ( )NO  ! INMATE INJURIES: ( )YES ( )NO
!_____
```