**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVID LEE WOMACK,** | : | **CIVIL ACTION NO. 1:06-CV-2348** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **JOSEPH V. SMITH,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM**

Presently before the court are two motions in limine (Docs. 188, 191) filed by

plaintiff David Lee Womack ("Womack") to exclude various evidence and testimony

at the trial in this matter set to commence on April 30, 2012.  For the reasons that

follow, the court will grant the motions in part and deny the motions in part.

I.   **Background**

Plaintiff Womack, an inmate currently incarcerated at USP Florence in

Florence, Colorado, brings this *Bivens* action[1] against prison officials Joseph V.

Smith, Kenneth Gabrielson, D. Scott Dodrill and John Oliver.  Womack asserts that

defendants violated his Eighth Amendment rights against cruel and unusual

punishment when they maintained him in ambulatory restraints for 26 consecutive

days from December 9, 2004 until January 3, 2005, while housed at USP Lewisburg

in Lewisburg, Pennsylvania.

---

[1] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403
U.S. 388 (1971).

On March 12, 2012, Womack filed his first motion in limine (Doc. 188), in
which he seeks to preclude defendants from offering at trial any testimony or
evidence relating to: (1) Womack's criminal record, (2) Womack's prison
disciplinary record prior to his August 7, 2003, transfer to USP Lewisburg, (3)
events and conduct after January 3, 2005 that do not specifically relate to the
restraint of Womack from December 9, 2004 until January 3, 2005, and (4) eight
videos of Womack from instances prior to or after the restraint period at issue in
this case.  Womack moves to preclude the evidence and testimony pursuant to
Federal Rules of Evidence 402, 403, 404, and 609.  Womack asserts that the evidence
is irrelevant, inadmissible character evidence, and to the extent relevant, its
probative value is substantially outweighed by the danger of unfair prejudice,
confusion of the issues and waste of time. Defendants oppose the motion asserting
that Womack is attempting unduly compartmentalize his 26 days in restraints
without providing the appropriate and necessary background as to how the
situation arose and the basis for defendants' decision to maintain Womack in
restraints.  (Doc. 194).

In Womack's second motion, filed on March 16, 2012, Womack asks the court
to preclude the testimony of certain defense witnesses who Womack claims were
never previously disclosed.  On March 12, 2012, counsel for defendants provided
counsel for Womack with a list of 61 individuals who came into contact with
Womack during the restraint period at issue.  (Doc. 192, Ex. C).  Counsel for
Womack avers that 41 of the 61 individuals had not been previously disclosed by

2

either party.  (Doc. 192, at 2).  Womack moves pursuant to Federal Rule of Civil

Procedure 37(c)(1) to exclude the testimony of the newly identified witnesses for

violation of defendants' discovery obligations under Rule 26(a).  Defendants counter

that they complied with their discovery obligation disclosure requirements and,

therefore, Womack's motion should be denied.  (Doc. 195).  The motions have been

fully briefed and are ripe for disposition.

## II.   Discussion

### A.   First Motion in Limine

The Federal Rules of Evidence govern the admissibility of evidence at trial.

All relevant evidence is admissible unless otherwise stated by the Constitution,

statue or other Federal Rules.  FED. R. EVID. 402; see also Daubert v. Merrell Dow

Pharms., 509 U.S. 579, 587 (1993) (noting that the "[b]asic standard of relevance

under Federal Rules of Evidence is liberal one.").  Under Rule 401, evidence is

relevant if it has "any tendency to make the existence of any fact that is of

consequence to the determination of the action more probable or less probable than

it would be without the evidence."  FED. R. EVID. 401.  Evidence that is not relevant

is not admissible.  FED. R. EVID. 402.

Pursuant to Rule 403 of the Federal Rules of Evidence, the court may exclude

relevant evidence "if its probative value is substantially outweighed by the danger

of unfair prejudice, confusion of the issues, or misleading the jury, or by

considerations of undue delay, waste of time, or needless presentation of

cumulative evidence."  FED. R. CIV. P. 403; see also Sprint/United Mgmt. Co. v.

Mendelsohn, 552 U.S. 379, 382 (2008); Coleman v. Home Depot Inc., 306 F.3d 1333,

1343-44 (3d Cir. 2002).  The Third Circuit has cautioned that the exclusion of

potentially relevant evidence pursuant to Rule 403 is an "extreme measure" at the

pre-trial stage.  Hines v. Consol. Rail Corp., 926 F.2d 262, 274 (3d Cir. 1991).

Evidence should rarely be excluded *in limine* pursuant to Rule 403 because "[a]

court cannot fairly ascertain the potential relevance of evidence for Rule 403

purposes until it has a full record relevant to the putatively objectionable evidence."

In re Paoli R.R. Yard PCB Litig., 916 F.2d 829, 859 (3d Cir. 1999).

Pursuant to Rule 404 of the Federal Rules of Evidence, character evidence is

generally not admissible to prove conduct.  In particular, "evidence of other crimes,

wrongs, or acts is not admissible to prove the character of a person in order to show

action in conformity therewith."  FED. R. EVID. 404(b).  Other crimes, wrongs or acts

are admissible, however, to prove motive, opportunity, intent, preparation, and

plan.  Id.

In a closely related vein, but contrary to the general rule on character

evidence, evidence of habit or routine practice is admissible to prove that the

conduct of a person on a particular occasion is in conformity with the habit or

routine practice.  FED. R. EVID. 406; see also FED. R. EVID. 406 advisory committee

notes (1972) ("Character and habit are close akin.").  Habit is described as one's

regular response to a repeated, specific situation.  See Becker v. ARCO Chemical

Co., 207 F.3d 176, 204 (3d Cir. 2000) (quoting FED. R. EVID. 406 advisory committee

notes (1972)); <u>see</u> <u>also</u> <u>id.</u> ('The doing of the habitual acts may become semi-automatic.').

Finally, Rule 609 of the Federal Rules of Evidence governs the admissibility of a witness's prior convictions for impeachment purposes. Pursuant to Rule 609(a), for purposes of attacking the character for truthfulness of a witness, evidence that the witness has been convicted of a felony "shall be admitted, subject to Rule 403 . . . if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." FED. R. EVID. 609(a)(1). In analyzing conviction evidence, the court must engage in a "genuine balancing" of probative value and prejudicial effect. <u>Tabron v. Grace</u>, 898 F. Supp. 293, 297 (M.D. Pa. 1995). Important considerations include "the nature of the convictions, the time that has elapsed since conviction, the importance of credibility to the underlying claim, and the potential for prejudice from admitting the convictions." <u>Id.</u> at 295.

A conviction more than ten years old (measured from the date of conviction or release from confinement for the conviction, whichever is later), is generally not admissible "unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantial outweighs its prejudicial effect." FED. R. EVID. 609(b). Thus, convictions over ten years old are only to be admitted in exceptional circumstances and the Rule 403 balancing is reversed. Whereas under Rule 403 unfair prejudice must substantially outweigh the evidence's probative value, for convictions over ten years

old, the probative value of the conviction must substantially outweigh the

prejudicial effect.

### 1. **Womack's Criminal Record**

Womack seeks to preclude any evidence of his criminal record, which

includes convictions for burglary, armed robber, sexual assault, and kidnapping

from the 1980s and 1990s.  Womack contends that the convictions are irrelevant to

the issue in this case—his period in restraint.  To the extent the convictions are

relevant, Womack claims that they should be excluded pursuant to Rule 403.

Finally, Womack argues that defendants should be prohibited to using his

convictions for impeachment purposes pursuant to Rule 609.

Defendants counter that Womack's convictions are relevant to their decisions

regarding the use of restraints.  They claim that Womack's criminal history was one

factor they took into consideration when managing Womack's violent behavior and

determining the appropriate level of restraints.  (See Doc. 194, at 11 (averring that

"it is important to know an inmate's criminal history, especially if that inmate has a

history of assault, as their experience shows that they had to show special

precaution with these inmates")).  With respect to the use of Womack's convictions

for impeachment purposes, defendants contend that the credibility of Womack is a

material fact and the use of prior criminal convictions to impeach a witness's

credibility is widely permitted.  (Doc. 194, at 16).

As an initial matter, the court finds that Womack's convictions and the length of his sentence are relevant to whether defendants had a culpable state of mind. Defendants' knowledge of an inmate's criminal convictions and the length of an inmate's sentence informs their management decisions and is an important consideration in assessing the inmate's risk factors. (See Doc. 194-1, at 3-6, 11, 26, 36). As Womack must established deliberate indifference on behalf of defendants in order to prevail in his Eighth Amendment claim, knowledge of Womack's convictions and sentence length have probative value on the issue of defendants' state of mind in securing Womack within the four corners of the institution.

Despite the relevance of Womack's criminal record, the court must still engage in a Rule 403 balancing of probative value and potential for prejudice. Womack's convictions include armed robbery, burglary, sexual assault, kidnapping, and possession of weapons for unlawful purposes. The nature of the convictions are important factors within the knowledge of defendants when handling Womack. However, the nature of Womack's convictions are violent and likely to be highly inflammatory if disclosed to the jury. The court therefore concludes that a restricted use of Womack's convictions is appropriate. Defendants may testify to their knowledge that Womack was convicted of crimes of violence and was serving a life sentence. The length of Womack's sentence is relevant to defendants' state of mind when managing Womack's custody. Womack's sentence is also quite relevant to Womack's familiarity with institutional settings, as well as his motivation and state of mind during the time period in question. However, the precise nature of

Womack's crimes are of limited import to the matter at bar and any probative value is outweighed by the prejudicial effect of such evidence, subject to the caveat noted below with respect to impeachment.  With these limitations in place, the court finds that any residual prejudice to Womack can be mitigated though the use of a limiting instruction to the jury, to wit: that evidence of Womack's convictions is admitted <u>only</u> as factual context for the purpose of assessing the parties' intentions or states of mind, and <u>not</u> for any other purpose.

With respect to the use of Womack's criminal record for impeachment purposes, the court notes that the 1988 and 1989 convictions for armed robbery and burglary are more than ten years old.  The court does not find exceptional circumstances warranting their admission.  Therefore, the defendants shall not reference those convictions for any purpose.  <u>See</u> FED. R. EVID. 609(b).

As to the 1990s convictions for which Womack is currently incarcerated, the case of <u>Tabron v. Grace</u>, 898 F. Supp. 293 (M.D. Pa. 1995), is instructive.  In <u>Tabron</u>, a § 1983 action against prison officials for failing to protect the incarcerated plaintiff from a fellow inmate, the Honorable Sylvia Rambo granted plaintiff's motion to preclude evidence of his second-degree murder and robbery convictions.  <u>Id.</u> at 294. Defendants opposed the motion arguing that the convictions had important probative value on the issue of credibility.  Judge Rambo concluded that the credibility of the plaintiff was not as pivotal as the defendants suggested, noting that many of the relevant facts were uncontested, such as whether the plaintiff suffered injuries and the seriousness of the injuries, and the lack of measures taken

8

to separate the plaintiff from the attacking inmate.  Id. at 295-96.  Also of great significance in Judge Rambo's decision was the fact that the conviction was for murder.  "A murder conviction . . . has the potential to do more than create a credibility handicap.  It has the potential to so prejudice the jury that its weighing of all the factual issues in the entire case may be impaired."  Id. at 296.

In the instant matter, unlike Tabron, Womack's credibility is very much at issue.  There are numerous disputed material facts concerning the restraint period, particularly whether Womack suffered injury during his time in restraints from December 9, 2004, to January 3, 2005.  (See Doc. 163, at 4-6).  Womack must prove as part of his Eighth Amendment claim a serious or significant physical or emotional injury.  (See Doc. 163, at 24); Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995).  Nonetheless, the court must engage in a genuine balancing of the prejudicial effect of the convictions.  As noted, the details of Womack's numerous convictions for crimes of violence may potentially distract the jury from the core issues and lead to confusion and error.  Hence, the court will not permit defendants to impeach Womack with any additional information regarding his crimes of violence unless Womack opens the door on direct examination.  Thus the court notes that this ruling is without prejudice to defendants' right to revisit the issue upon the conclusion of Womack's trial testimony.

### 2.    Womack's Prison Disciplinary Record Prior to Transfer to USP Lewisburg

Womack next seeks to preclude evidence of his prison disciplinary record prior to his transfer to USP Lewisburg on August 7, 2003.  Admittedly, Womack amassed an extensive disciplinary record including over 50 incident reports during his time in federal custody from 2001 to 2003 prior to his transfer to USP Lewisburg.  The incidents over this period involve a wide range of offenses including assault, destruction of property, possession of dangerous weapons, refusal of orders, threats of bodily harm, and self-mutilation.  (See Doc. 163, at 2-3).  Womack contends that his disciplinary record prior to his transfer is irrelevant to the incident at issue and any attempt to present his record would be a ploy to portray Womack's bad character in violation of Rule 404(b).  (Doc. 189, at 12).[2]  Womack additionally argues that his disciplinary record should be excluded on Rule 403 grounds.  (Doc. 189, at 14).

Defendants contend that Womack's disciplinary record demonstrates that staff were dealing with a violent individual who they had to approach with care.  According to defendants, the disciplinary record establishes a pattern of an inmate who has attempted to manipulate his situation and for whom discipline has not

---

[2]  Womack does not seek to exclude his disciplinary record during his time at USP Lewisburg leading up to the restraint period.  (Doc. 189, at 12 n.2).

worked in the past.[3]  The disciplinary record thus informed defendants' decision about the use of restraints.

To the extent Womack's disciplinary record influenced defendants' decisions regarding use of restraints on Womack, the disciplinary record is relevant. According to defendants' answers to interrogatories during discovery in this matter and videos of Womack in restraints, Womack's record affected prison officials in their determination of whether restraints were necessary as well as the type of restraints that were utilized.  Defendant Smith, Warden of USP Lewisburg during the relevant time period, indicated that an inmate's disciplinary history is relevant to his security level and custody classification which are factors in determining the appropriate form of restraints.  (Doc. 194-1, at 11).  Defendants Gabrielson and Oliver similarly indicated that an inmate's past history and behavior, particularly past history of assaultive behavior, were factors considered by them in deciding whether restraints were necessary and, if so, the level of restraints to be used.  (Id. at 26, 36).  Additionally, in the June 16, 2004 video of prison officials placing Womack in four-point restraints, the Lieutenant clearly notes, as a relevant consideration, Womack's disciplinary history which includes over 93 incident reports since entering BOP custody in 2001.

---

[3]  Defendants note that their Chief Psychiatrist made recommendations to Warden Smith regarding when it would be safe for Womack to be released from restraints based on Womack's history at other federal penitentiaries in addition to his conduct at USP Lewisburg.  (Doc. 194, at 12).

The court does not find the evidence, offered for the purposes of establishing defendants' knowledge or state of mind, to be inadmissible character evidence. However, the court finds that any use of the disciplinary record, outside of showing defendants knowledge and how that knowledge informed their decisions regarding restraints, is inadmissible character evidence. Other disciplinary incidents are inadmissible to prove the character of Womack or to show action in conformity therewith. See Fed. R. Evid. 404(b). Thus, any attempt to show a pattern of bad behavior by Womack is exactly the sort of character evidence that Rule 404(b) precludes.

Turning to the potential for prejudice from the admission of Womack's disciplinary record prior to his stay at USP Lewisburg, the court notes the obvious prejudice and distraction to the jury that will be caused by explaining the 50 or more disciplinary incidents. The court finds that such evidence will unduly delay trial, waste time and have the potential to confuse the jury from the relevant issues. Thus, defendants may testify about Womack's pre-Lewisburg disciplinary record only to the extent they knew of and considered Womack's pre-Lewisburg disciplinary record. Specific disciplinary incidents and the details surrounding them are not admissible, unless specific instances lead to a decision on the classification, management, custody, or use of restraints on Womack. The court will not permit extensive testimony or evidence on the pre-Lewisburg incidents.

3.     **Events and Conduct After January 3, 2005 Not Related to the Restraint Period**

Womack also moves to preclude evidence of events and disciplinary incidents at USP Lewisburg and other institutions that occurred subsequent to the restraint period.  In addition, he seeks to preclude his recent medical records, as well as his current status as a prisoner and location of imprisonment.  (Doc. 189, at 15). Womack moves for the exclusion of this evidence on grounds of relevance and Rule 403 prejudice.  Defendants counter that Womack's subsequent disciplinary history demonstrates his habit of manipulating his situation in an attempt to get what he wants.  (Doc. 194, at 15).

Womack is currently incarcerated at USP Florence High, in Florence Colorado, a facility in the same complex as USP Florence ADMAX, the only "Super Max" facility in the federal system, and a facility known to house the most violent prisoners in the nation.  (Doc. 189, at 16).  The court finds that both Womack's current incarceration status and location of incarceration are irrelevant to any issue in this case and are therefore inadmissible at trial.[4]

---

[4]  The court notes that appropriate security measures will be employed to ensure the safety of all those in the courtroom and to maintain adequate control over Womack given his criminal history and extensive disciplinary record.  Should Womack be in restraints during the trial, the court does not find that Womack will be unduly prejudiced by the jury's knowledge of his current incarceration.  In the court's view, the knowledge that Womack is still incarcerated will not create additional prejudice; to the contrary, it is no more prejudicial than the necessary disclosure that Womack was incarcerated at the time of the incident giving rise to this matter.

Similarly irrelevant and inadmissible are Womack's post restraint period disciplinary incidents. The post-restraint incidents could not have informed defendants' knowledge or decision-making about Womack and the use of restraints at issue in this case. Therefore, they cast no light on the culpability or lack thereof of defendants during the restraint period.

Regarding post incident medical records, however, the court finds they are relevant to the extent they concern the injuries or treatment of the injuries allegedly sustained during the restraint period. Additionally, if Womack claims injuries from the restraint period that are documented in later medical records as caused by other incidents, defendants may use the medical records to impeach any claim that the injuries were sustained during the restraint period. Beyond these uses, the court can discern no relevance to the post-incident medical records.

### 4.   <u>**Eight Videos of Womack Prior to the Restraint Period**</u>

Finally, Womack moves to preclude the admission of eight videos depicting Womack in restraints at USP Lewisburg—six from incidents prior to the restraint period at issue, and two from incidents subsequent to the restraint period. (Doc. 189, at 17). Womack contends that the eight videos are not relevant, or they are highly prejudicial depicting Womack in compromising, agitated states while in restraints, but not depicting him during the relevant restraint period. (<u>Id.</u> at 18).

Defendants counter that the videos are relevant to show their knowledge of Womack's behavior in restraints, his unpredictable and instantaneous mood shifts while in restraints, and an over all pattern of an inmate who was attempting to

manipulate his situation at all costs. (Doc. 194, at 2). Thus, defendants contend that

the videos provide important context for understanding their decision-making

process and their assessment of risk factors attendant to Womack's custody.

Defendants further note that the videos depict Womack struggling against his

restraints and attempting to injure himself while in restraints, which cast doubt on

whether Womack's alleged injuries were actually sustained during the 26 day

period or during prior restraint periods. Finally, defendants contend that the

videos are admissible under Rule 406 to show that "Womack had a regular practice

of violating BOP policy in order to manipulate his situation." (Doc. 194, at 14).

    The court has viewed seven of the eight videos defendants seek to introduce

at trial.[5]  First, the two post-restraint period videos, are irrelevant. They do not and

---

[5]  There are two videos from February 11, 2004. In the first, Womack is
shown in soft four-point restraints attempting to destroy them. Womack is trying to
bite the restraints and violently moving in the restraints. Womack threatens to kill
himself and cut everything up. The second video is a debriefing by defendant
Gabrielson who explains why Womack was placed in four-point restraints and
eventually moved to the hospital to be placed on suicide watch.

    The March 10, 2004 video depicts Womack while he is being moved from a
cell where he was in ambulatory restraints to a cell where he is placed in four-point
restraints. While in four-point restraints, Womack is seen resisting staff who are
attempting to remove an object from his throat.

    The April 22, 2004 video concerns an incident in which Womack refused staff
orders to return his food tray and threatened to hurt staff who came into his cell.
The video notes the staff's awareness of Womack's lengthy history of attempting to
hurt himself and staff. Womack is placed in ambulatory restraints and yells at
guards to strap him down, threatening that he will bust his head open the first
chance he gets. Womack is seen attempting to cut his wrist or break his restraints
against the corner of his cell window.

    The June 16, 2004 video depicts a use of force team assembled to place four-
point restraints on Womack. The Lieutenant recites Womack's criminal
history—Womack's life sentence for rape, robbery and kidnapping—and notes

could not inform the defendants' decision to maintain Womack in restraints for 26 consecutive days. These two videos are inadmissible.

The remaining six videos are relevant to the extent the defendants knew of, or participated in, the incidents in the video and that knowledge or experience informed their decision regarding the restraint of Womack during the 26 day period at issue.[6] They are not barred by Rule 404(b) when used as evidence of defendants'

---

Womack's extensive disciplinary record while incarcerated, including over 93 incident reports since entering BOP custody in 2001. He further notes Womack's recent suicide attempt and hospital stay for ingesting an unknown amount of medication. He explains that Womack has become a threat to himself and staff and had covered his window in feces and removed all his clothing. The Lieutenant notes that ambulatory restraints have not proved effective and Womack has defeated soft restraints in the past, thus the decision had been made to place Womack in hard four-point restraints.

The July 21, 2004 video shows Womack in four-point restraints and a psychiatrist speaking with Womack about his behavior. The video evidences injuries Womack received from trying to destroy his restraints and Womack makes statements that he will draw blood and do whatever he has to do to be taken to the hospital. Womack is seen struggling while in four-point restraints to remove the mattress from his bed. Defendant Gabrielson provides an explanatory debriefing of the situation leading to the use of four-point restraints. Gabrielson notes Womack's history of beating soft restraints by using the metal strap of the soft restraint to injure his face.

The February 2, 2005 video depicts Womack being placed in ambulatory restraints. Defendant Gabrielson discusses Womack's vast disciplinary history including assaults on staff, and notes that Womack is throwing objects, including feces and urine. Womack is seen yelling, refusing to take a cell mate, and threatening that there will be blood. Womack is placed in two sets of restraints due to his past history of breaking single sets of restraints.

[6] The court notes that defendants do not appear in all of the pre-restraint period videos. Defendant Gabrielson appears in the February 11, 2004 and July 21, 2004 videos.

state of mind, but they would be inadmissible character evidence if used for the

intention of showing action in conformity with other crimes wrongs or acts.[7]

The court rejects defendants' argument that videos are admissible habit

evidence. The videos do not establish a habit. A habit is defined as a regular

response to a repeated, specific situation, that may be a semi-automatic reaction,

such as taking two stairs at a time every time one goes down stairs, or pressing the

automatic lock button every time one steps out of his or her vehicle. See Becker v.

ARCO Chemical Co., 207 F.3d 176, 204 (3d Cir. 2000) (quoting FED. R. EVID. 406

advisory committee notes (1972)). Being manipulative is quintessentially a

---

[7] Womack's reliance on Covell v. Bell Sports, Inc., 2010 WL 4783043 (E.D. Pa. Sept. 8, 2010), to support his contention that the videos are simply a tawdry attempt to display Womack's bad character, is misplaced. In Covell, a products liability action against a helmet manufacturer, the plaintiffs sought to introduce a video of experiments conducted by the defendant's expert 30 years prior. The experiments were conducted on baboons and plaintiffs sought to introduce portions of the video in which the baboons' helmeted heads were struck with hammers after being rotated. Id. at *3. The defendant's expert did not refer to the experiment in his testimony and only cited one article in his expert report that discussed the experiment depicted in the video. Id. The court ruled that the potential abuse of the baboons during the experiment had nothing to do with the case, and alternatively the prejudicial effect of the video outweighed its probative value. Id. at *2, 3. The court concluded that "[i]t is obvious . . . that Plaintiffs' real goal here was not to challenge the validity of these almost thirty-year-old experiments. Rather Plaintiffs sought to introduce the video in a tawdry attempt to inflame the jury. Plaintiffs did not wish to show the jury a complete video of all the experiments, but only the 'three to four minutes' when the baboons were struck—a selection plainly intended only to upset the jury." Id. (internal citations omitted). Unlike Covell the videos at issue are relevant to defendants' knowledge of Womack's history and behavior in restraints. Moreover, they specifically depict Womack.

character trait, not a habit.  Moreover, Womack's behavior in each video is not the same and thus fails to establish a regular response to a repeated situation.

Given that the videos have probative value as to defendants' knowledge of Womack's behavior in restraints, thereby informing their restraints decision, the court will again turn to a Rule 403 balancing.  Having reviewed the six relevant videos, which combined run over two hours in length, the court will preclude defendants from introducing the entire length of the videos at trial.  The amount of time that would be necessary to play the videos in their entirety is relatively significant.  More importantly, the potential to confuse and distract the jury from the central issue regarding the use of ambulatory restraints in the instant matter through the viewing of over two hours of videos is high.  However, the court will permit the defendants to present a summary of these prior contacts in no more than 20 minutes of video presentation, provided that one or more of the defendants actively participated in the incident (meaning one or more defendants appeared in the video at some point).  This video presentation must be edited to exclude excessive nudity and must be limited to specific examples of Womack's demeanor and the procedures necessary to manage Womack.

The limitation of video evidence to twenty (20) minutes of specific examples of defendants' actively involved in the management of Womack in restraints, and Womack's response thereto, is a balanced solution to the issues raised, which will permit the jury to view actual, historical interaction of Womack in restraints, while simultaneously avoiding the dangers of cumulative and highly offensive video

18

evidence.  In addition to the twenty minutes of video, defendants may testify to their personal knowledge of Womack's prior behavior and demeanor in restraints and how those prior restraint periods affected their decision-making during the 26 day restraint period at issue.  For these stated reasons, Womack's first motion in limine is granted in part, and denied in part as stated.

      **B.**    <u>**Second Motion in Limine**</u>

In Womack's second motion in limine, Womack moves to preclude the testimony of eleven proposed defense witnesses on grounds that they were never disclosed during discovery in this matter.  On March 12, 2012, defendants provided to Womack's counsel a letter identifying 61 current or former employees of the BOP who had contact with Womack while he was in restraints.  (<u>See</u> Doc. 192, Ex. C). Womack asserts that 41 of the individuals have never been identified previously during the course of this litigation.  (Doc. 192, at 2).  The parties have since exchanged trial witness lists and eight of the 41 previously unidentified employees are on the list, in addition to three newly identified individuals, also allegedly never previously disclosed.  (Doc. 199, at 2).  Defendants contend that they complied with their discovery disclosure obligations under Rule 26 when they provided the witnesses' names and the substance of their information to Womack in documents and videos per Rule 33(d).  (Doc. 195, at 2).  The eleven individuals subject to Womack's motion in limine are: Matthew Edinger, James Keiser, Terry Bingaman, Gary Persing, Bill McFadden, Jeremy Dressler, Tracey Hooper, Pedro Carrasquillo, Kevin Kelly, Mike Hornberger, and Franz Klossner.  (Doc. 199, at 2).

19

Rule 26 of the Federal Rules of Civil Procedure is the general rule governing discovery and dictates that "a party must, without awaiting a discovery request, provide to the other parties: the name, and if known, the address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses." FED. R. CIV. P. 26(a)(1)(A)(i). Rule 26 also imposes an ongoing duty upon each party to timely supplement or correct its disclosures should additional or corrective information come to light that has not otherwise been disclosed during the discovery process. Id. 26(e)(1)(A).

Rule 37(c)(1) of the Federal Rules of Civil Procedure provides the sanction for a party who fails to comply with Rule 26(a)'s disclosure requirements: "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). The non-producing party has the "burden of proving substantial justification or that its failure to produce was harmless." Tolerico v. Home Depot, 205 F.R.D. 169, 175 (M.D. Pa. 2002). Substantial justification for the failure to make a required disclosure has been regarded as "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." United States v. Dentsply Intern., Inc., No. Civ. A. 99-5, 2000 WL 654378, *7 (D. Del. May 10, 2000). Failure to comply with Rule 26(a) is harmless "if it involves an honest mistake, coupled with sufficient knowledge by the other party of the material that has not

been produced." Klatch-Maynard v. Sugarloaf Tp., No. 3:06-CV-0845, 2011 WL 2006424, at *2 (M.D. Pa. May 23, 2011).

The Third Circuit has held that "even under Rule 37, the imposition of sanctions for abuse of discovery . . . is a matter within the discretion of the trial court." Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 156 (3d Cir. 1995) (citations and quotations omitted). A district court is to consider the following factors in exercising its discretion to exclude testimony: "(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court; (4) bad faith or willfulness in failing to comply with the district court's order" and (5) the importance of the excluded testimony. Klatch-Maynard, 2011 WL 2006424, at *3 (citing Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 904-05 (3d Cir. 1977), overruled on other grounds, Goodman v. Lukens Steel Co., 777 F.2d 113 (3d Cir. 1985)). The Third Circuit cautions that excluding evidence is an "extreme sanction" for a violation of a discovery order. In re TMI Litig., 193 F.3d 613, 721 (3d Cir. 1999) (citation and quotations omitted).

According to defendants Rule 26(a)(1)(A)(I) is a standard, court-ordered interrogatory. (Doc. 195, at 5). Rule 33 governs interrogatories and pursuant to subpart (d), if the answer to an interrogatory can be determined by examining business records, and if the burden of deriving or ascertaining the answer to the

interrogatory will be substantially the same for either party, the responding party may answer the interrogatory by providing the other party a reasonable opportunity to examine and make copies of the records. FED. R. CIV. P. 33(d). Therefore, defendants contend that they complied with the disclosure requirements under Rule 26(a) by providing Womack copies of statements, videos and documents noting the BOP officials that were present and who witnessed Womack in restraints. (Doc. 195, at 6).

With respect to the eleven witnesses at issue here, defendants assert that the two-hour medical check logs provided to Womack during discovery list Hooper, Persing, McFadden, and Carrasquillo, and the fifteen minute check logs contain signatures from Hornberger and Keiser. (Id. at 6). Defendants admit, however, that the signatures in the logs were indecipherable and that counsel only received the full names of those officials on March 7, 2012. (Id. at 4). Defendants further note that in the videos of December 9, 2004, December 20, 2004 and February 2, 2005, provided to Womack during discovery and relied upon by him in this matter, the following individuals appear on camera and identify themselves: Eddinger, Hornberger, Dressler, and Keiser. (Id. at 7). Defendants note that Hooper in particular was referenced numerous times by Womack during his deposition and thus cannot be said to be unknown to Womack. (Id. at 2; Id. Ex. A, at 80, 122, 125-26, 129, 130-31, 145, 150, 173, 212, 298-301). The connection of the remaining three witnesses—Bingaman, Kelly and Klosser—to the instant action is unknown.

The court finds defendants' argument lacks merit. Defendants have cited no case law in support of their position that Rule 26(a)'s witness disclosure requirements can be satisfied by providing business records pursuant to Rule 33. Although Moore's Federal Practice describes the disclosure requirement of Rule 26(a)(1)(A)(i) as "the functional equivalent of standing court-ordered interrogatories," Moore's further explains that "[t]he parties must provide the specific names of the individuals they might use as witnesses. It is not sufficient to identify them through the use of a collective description, such as 'employees or representatives of the defendant.' Furthermore, if some or all of the identified individuals are employees of the disclosing party, their home addresses and telephone numbers must be disclosed." 6 MOORE'S FEDERAL PRACTICE § 26.22(4)(a)(i).[8]

The court concludes that defendants failed to comply with their discovery obligations regarding disclosing witnesses. Defendants' failure to properly disclose the eleven witnesses is neither substantially justified nor harmless. Defendants have had the check logs and videos from the beginning of this litigation, and their failure to decipher the signatures or otherwise determine which prison officials

---

[8] Assuming Rule 33 did apply to the instant dispute, the court finds that defendants did not comply with the requirements of that rule. As the signatures of the logs are indecipherable, an examination of the documents would not reveal the names of potential witnesses. Additionally, the burden on defendants to determine the identities of the individuals signing the logs is significantly less than for Womack. The defendants, as employees of the BOP, could far more easily obtain from the BOP the identities of other BOP employees.

would provide testimony at trial until weeks before trial is unacceptable.  Therefore, the court must determine the appropriate sanction for the discovery violations.

Trial is mere weeks away.  The prejudice and surprise to Womack is significant.  See Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 719-21 (3d Cir. 1997) (affirming district court's exclusion of expert witness testimony where expert disclosed three weeks prior to trial).  Womack can only presume that the testimony of the eleven witnesses relates to his restraint period, but the substance of their testimony is unknown.  Although Womack's counsel could prepare for the testimony of the eleven witnesses, forcing Womack's counsel to focus their efforts on these eleven witnesses at this stage in the litigation is unfair.  See id. at 721.  Moreover, the court is unable to discern from the briefing to what the witnesses will testify.  Considering all these factors, the court concludes that prejudice to Womack is substantial and cannot reasonably be cured.  The court will therefore exclude the testimony of the eleven witnesses identified by plaintiffs.  See FED. R. CIV. P. 37(c)(1).

**III.**  <u>**Conclusion**</u>

For the foregoing reasons the court will grant in part and deny in part Womack's first motion in limine (Doc. 188), and grant Womack's second motion in limine.  (Doc. 191).  An appropriate order follows.

  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:        April 13, 2012

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVID LEE WOMACK,** | : | **CIVIL ACTION NO. 1:06-CV-2348** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **JOSEPH V. SMITH,** *et al.,* | : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this 13th day of April, 2012, upon consideration of the motions in

limine (Docs. 188, 191) filed by plaintiff David Lee Womack ("Womack"), and for the

reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1.    The first motion in limine (Doc. 188) is GRANTED in part, and
DENIED, in part, as follows:

    a.    Plaintiff's motion to exclude evidence of his criminal record is
GRANTED, in part:

        i.    Defendants may testify to their knowledge that Womack
was convicted of crimes of violence and the length of his
sentences.  The precise nature of these crimes shall not be
disclosed to the jury subject, however, to further review at
the conclusion of Womack's trial testimony for the
reasons set forth in the accompanying memorandum.

        ii.    Defendants shall not reference Womack's 1988 and 1989
convictions for any purpose.

    b.    Plaintiff's motion to exclude evidence of Womack's disciplinary
record prior to entering USP Lewisburg in August 2003, is
GRANTED, in part:

      i.      Defendants may testify about Womack's pre-Lewisburg disciplinary record only to the extent they knew of and considered Womack's pre-Lewisburg disciplinary record in managing Womack.

      ii.     Specific disciplinary incidents and the details surrounding them are not admissible, unless specific instances lead to a decision on the classification, management, custody, or use of restraints on Womack.

      iii.    The court will not permit extensive testimony or evidence on the pre-Lewisburg incidents.

c.    Plaintiff's motion to preclude events and conduct subsequent to the restraint period is GRANTED, in part:

      i.      Defendants shall not reference any disciplinary violations subsequent to the restraint period at issue.

      ii.     Defendants shall not present evidence of Womack's current incarceration or the location of his current incarceration.

      iii.    Defendants may present medical evidence of any injuries reasonably relating to one or more of the injuries allegedly sustained during the restraint period at issue.

d.    Plaintiff's motion to preclude eight pre- and post-incident videos is GRANTED in part:

      i.      Defendants may show up to twenty (20) minutes of video presentation, in which one or more of the defendants actively participated (that is, appeared in the video at some point), edited to exclude excessive nudity and limited to specific examples of Womack's demeanor and the procedures necessary to manage Womack.

      ii.     Defendants shall not present any portion of the post-incident videos.

2.    Plaintiff's second motion in limine (Doc. 191) to preclude the testimony of defense witnesses Matthew Edinger, James Keiser, Terry Bingaman, Gary Persing, Bill McFadden, Jeremy Dressler, Tracey Hooper, Pedro Carrasquillo, Kevin Kelly, Mike Hornberger, and Franz Klossner is GRANTED.

  S/ Christopher C. Conner   
CHRISTOPHER C. CONNER
United States District Judge
